John J. Kastner, Jr.
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
1760 E. River Road, Suite 230
Tucson, Arizona 85718-5990
State Bar No. 021529
Facsimile: (520) 618-1071
Email: jkastner@jsslaw.com
Telephone: (520) 618-1050

MinuteEntries@jsslaw.com

*Attorneys for Defendant*
*AmerisourceBergen Drug Corporation*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| TUCSON MEDICAL CENTER, | No. |
| Plaintiff, | |
| vs. | |
| PURDUE PHARMA L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY INC.; AMNEAL PHARMACEUTICALS, INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHOMCNEIL-JANSSEN PHARMACEUTICALS, INC. N/KA JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, FNC N/K/A JANSSEN PHARMACEUTICALS, INC.; ABBOTT LABORATORIES; ABBOTT LABORATORIES, INC.; DEPOMED, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; MALLINCKRODT, LLC; INSYS THERAPEUTICS, INC.; MALLINCKRODT PLC; SPECGX; ALLERGAN PLC F/K/A ACTAVIS PLS; WATSON PHARMACEUTICALS, INC. N/K/A ACTAVIS INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC. F/K/A WATSON PHARMA, INC.; ANDA, INC.; H.D. SMITH, LLC | **NOTICE OF REMOVAL**<br><br>**(Honorable _____)** |

1

1 F/K/A H.D. SMITH WHOLESALE
DRUG CO.; HENRY SCHEIN, INC.;
2 MCKESSON CORPORATION;
AMERISOURCEBERGEN DRUG
CORPORATION; AND CARDINAL
3 HEALTH, INC.,

4                Defendants.

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant AmerisourceBergen Drug Corporation ("AmerisourceBergen") has removed the above-captioned action from the Superior Court of the State of Arizona in and for the County of Pima, Arizona to the United States District Court for the District of Arizona.  As grounds for removal, AmerisourceBergen states:

## I.   Nature of Removed Action

1. On August 24, 2018, Tucson Medical Center ("Plaintiff") filed *Tucson Medical Center v. Purdue Pharma L.P., et al.* in the Superior Court of the State of Arizona in and for the County of Pima.  The court assigned the case Docket No. C20184213.

2. The Complaint asserts claims against two groups of Defendants. (Complaint, attached as **Exhibit 1**).

3. The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.; Amneal Pharmaceuticals, Inc.; Teva Pharmaceuticals, USA, Inc.; Cephalon, Inc.; Johnson &. Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica Inc. n/k/a Janssen Pharmaceuticals,

6295145v1(1.912)

Inc.; Noramco, Inc.;[1] Abbott Laboratories; Abbott Laboratories Inc.; Depomed, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Insys Therapeutics, Inc., Allergan plc f/k/a Actavis PLS; Watson Pharmaceuticals, Inc. n/k/a Actavis, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt Plc; Mallinckrodt LLC; and SpecGx LLC (collectively, "Marketing Defendants").

4.       The second group of defendants consists of AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; McKesson; Anda, Inc.; H.D. Smith, LLC f/k/a H. D. Smith Wholesale Drug Co.; and Henry Schein, Inc. (collectively, "Distributor Defendants").

5.       The Complaint asserts eleven counts against AmerisourceBergen and the other Distributor Defendants: violations of the Arizona RICO Act (Claim I); violations of Arizona's Consumer Fraud Act (Claim II); negligence (Claim III); wanton negligence (Claim IV); negligence per se (Claim V); negligent distribution (Claim VII); nuisance (Claim VIII); unjust enrichment (Claim IX); fraud and deceit (Claim X); and civil conspiracy to commit fraud and maintain a nuisance (Claim XI); and fraudulent concealment (Claim XII).  *See* Compl. ¶¶ 828-998, Claims for Relief.

6.       In support of its causes of action, Plaintiff pleads, among other things, that federal laws and regulations require pharmaceutical distributors to detect, report, and then halt shipment of "suspicious orders" for prescription opioids, *see, e.g.*, Compl. ¶ 400.

---

[1] Although Noramco, Inc. is listed as a defendant within the body of the Complaint, *see* ¶¶ 1, 104, 106, it was not named in the caption of the Complaint.

6295145v1(1.912)

7.      Because the duties governing reporting and shipping "suspicious" opioid orders arise from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiff pleads that alleged violations of federal law form the basis for its claims.

8.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed a multidistrict litigation ("MDL") and transferred opioid-related actions to Judge Dan Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407.  *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328.  More than 1,150 opioid-related actions are pending in the MDL, including actions originally filed in this District.[2]

9.      AmerisourceBergen intends to tag this case immediately for transfer to the MDL.

**II.    Timeliness of Removal**

10.     AmerisourceBergen was served with the Complaint on August 24, 2018. (See **Exhibit 2**).

11.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiff's Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

---

[2] *See, e.g.*, *Kingman, City of v. Purdue Pharma LP*, No. 3:18-cv-08191 (D. Ariz.) (transferred to the MDL on September 12, 2018); *Hopkins v. Purdue Pharma LP*, No. 2:18-cv-02646 (D. Ariz.) (transferred to the MDL on September 5, 2018); *Northwest Arizona Employee Benefit Trust v. Purdue Pharma LP*, No. 3:18-cv-08190 (D. Ariz.) (transferred to the MDL on September 5, 2018); *National Roofers Union & Employers Joint Health & Welfare Fund v. Purdue Pharma LP*, No. 2:18-cv-01949 (D. Ariz.) (transferred to the MDL on July 16, 2018). .

4

12. "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

## III.    Propriety of Venue

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the court where the state court action was pending prior to removal is a state court within this federal district and division.

## IV.    Basis of Removal

14. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*[3]

---

[3] A defendant need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception.*" (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)). More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." 565 U.S. 368, 379 (2012) (brackets and citations omitted).

5

15.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

16.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002).

17.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

18.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258; *see also One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013) (federal

jurisdiction is proper "where a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities" (citation and alteration omitted)); *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir. 2009) ("To satisfy the rule, the plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed.").

19. As set forth below, this case meets all four requirements.[4]

20. Although Plaintiff ostensibly pleads its theories of recovery against Distributor Defendants as state law claims, it bases the underlying theory of liability on Distributor Defendants' alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that Distributor Defendants allegedly had a duty to identify, report, and then not ship.

21. The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations, 21 C.F.R. § 1301.71(a), as the Complaint itself acknowledges. *See* Compl. ¶ 541 (alleging that "*[f]ederal requirements* incorporated

---

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

7

into Arizona law impose a non-delegable duty upon registrants to design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant in its area of any suspicious orders.") (emphasis added); *id.* ¶ 542 ("'Suspicious orders' include orders of an unusual size, orders of unusual frequency or orders deviating substantially from a normal pattern. See 21 C.F.R. § 1301.74(b)"); *id.* ¶ 587 (alleging that "[t]he Defendants also had reciprocal obligations under the CSA to report suspicious orders of other parties if they became aware of them . . .[and] were thus collectively responsible for each other's compliance with their reporting obligations.")

22.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses.  *See Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (Drug Enf't Admin. July 3, 2007), as source of DEA's "Shipping Requirement"); *see also* Compl. ¶ 543 (citing *Southwood Pharm., Inc.* and *Masters Pharm., Inc.*, and alleging that "[i]n addition to reporting all suspicious orders, the Distributor Defendants must also stop shipment on any order which is flagged as suspicious and only ship orders which were flagged as

8

potentially suspicious if, after conducting due diligence, the recipient can determine that the order is not likely to be diverted into illegal channels").

23.     Plaintiff's theories of liability against Distributor Defendants, as pled in the Complaint, are thus predicated on allegations that Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiff's claims—to "halt" or refuse to ship such orders to Arizona pharmacies. *See* Compl. ¶¶ 540-556.

24.     Specifically, Plaintiff invokes federal law to support its claims and pleads that Distributor Defendants violated federal law with, among others, the following allegations:

> a.     "Federal requirements incorporated into Arizona law impose a non-delegable duty upon registrants to design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant in its area of any suspicious orders." Compl. ¶ 541.
>
> b.     "Suspicious orders" include orders of an unusual size, orders of unusual frequency or orders deviating substantially from a normal pattern. *See* 21 C.F.R. § 1301.74(b) . . ." Compl. ¶ 542.[5]

---

[5] Plaintiff also cites A.A.C. R4-23-604 and A.A.C. R4-26-605 for the source of the

c.    "In addition to reporting all suspicious orders, the Distributor Defendants must also stop shipment on any order which is flagged as suspicious and only ship orders which were flagged as potentially suspicious if, after conducting due diligence, the recipient can determine that the order is not likely to be diverted into illegal channels.  *See Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,501 (Drug Enf't Admin. July 3, 2007); *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F. 3d 206 (D.C. 2017).  Regardless, all flagged orders must be reported. *Id.*" Compl. ¶ 543.

d.    "As the DEA advised the Distributor Defendants in a letter to them dated September 27, 2006, wholesale distributors are "one of the key components of the distribution chain . . . The DEA's September 27, 2006 letter also warned the Distributor Defendants that it would use its authority to revoke and suspend registrations when appropriate.  The letter expressly states that a distributor, in addition to reporting suspicious orders, has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate medical, scientific, and industrial channels." Compl. ¶¶ 547-49.

---

duties to report and halt suspicious orders. As noted below, neither of these regulations contains any reference to suspicious orders of prescription drugs, or imposes any requirement to report or halt suspicious orders.

10

e.   "The Defendants also had reciprocal obligations under the CSA to report suspicious orders of other parties if they became aware of them.  Defendants were thus collectively responsible for each other's compliance with their reporting obligations."  Compl. ¶ 587.

f.   "The Distributor Defendants unlawfully filled suspicious orders of unusual size, orders deviating substantially from a normal pattern, and/or orders of unusual frequency, and/or in areas from which the Distributor Defendants knew opioids were likely to be diverted."  Compl. ¶ 641.

g.   "In January 2017, McKesson further admitted to its ongoing breach of its duties to monitor, report, and prevent suspicious orders of oxycodone and hydrocodone by entering into a Settlement Agreement and Release with the DEA and the United States Department of Justice . . . Despite its obligations contained in the 2008 Settlement Agreement, McKesson failed to properly monitor its sales of controlled substances and/or report suspicious orders to DEA, in accordance with McKesson's obligations under the 2008 Agreements, the CSA, and 21 C.F.R. § 1301.74(b)."  Compl. ¶ 655-57.

h.   "Each of the Marketing Defendants and Wholesaler Defendants has engaged in unfair and/or deceptive trade practices by omitting the material fact of its failure to design and operate a

11

system to disclose suspicious orders of controlled substances, as well as by failing to actually disclose such suspicious orders, as required of 'registrants' by the federal CSA, 21 C.F.R. §1301.74(b) . . . ." Compl. ¶ 847.

i. "Specifically, through the CSA, which created a closed system of distribution for controlled substances, Congress established an enterprise for good.  CSA imposes a reporting duty that cuts across company lines.   Regulations adopted under the CSA require that companies who are entrusted with permission to operate with within this system cannot simply operate as competitive in an anything goes profit-maximizing market. Instead, the statute tasks them to watch over each other with a careful eye for suspicious activity." Compl. ¶ 801.

j. "Defendants distributed opioids in an improper manner by . . . [c.] Choosing not to or failing to effectively monitor for suspicious orders; [d.] Choosing not to or failing to report suspicious orders; [e.] Choosing not to or failing to stop or suspend shipments of suspicious orders; and [f.] Distributing and selling opioids prescribed by 'pill mills' when Defendants knew or should have known the opioids were being prescribed by pill mills." Compl. ¶ 908.

k. "The Defendants further worked together in their unlawful failure to act to prevent diversion and failure to monitor for,

12

1        report, and prevent suspicious order of opioids."  Compl. ¶ 974.

2        25.    Critically, Plaintiff's theory of liability also relies on an expansive

3   reading of federal law that calls into question an agency determination.  Plaintiff

4   alleges not only that Distributor Defendants should have detected and reported

5   discrete suspicious orders by individual pharmacies, but that Distributor Defendants

6   should have recognized that the *total volume* of prescription opioids distributed to

7   various regions was suspicious or unreasonable.  *See, e.g.*, Compl. ¶ 45 ("These

8   Defendants' harms were compounded by supplying opioids beyond what the market

9   could bear, funneling so many opioids into Arizona communities that the product

10  could only have been diverted and used illicitly.  The massive quantities of opioids

11  that flooded into Arizona as a result of Defendants' wrongful conduct—431 million

12  doses in 2016, enough for every Arizonan to have a two-and-a-half-week supply—

13  has devastated communities across this State, especially the southern Arizona

14  community served by the Tucson Medical Center.").

15      26.    To succeed on that theory, Plaintiff would thus have to show that the

16  total quantity of prescription opioids that all pharmaceutical distributors distributed

17  was unreasonable.  However, the total amount of prescription opioids distributed in

18  any given year turns on annual aggregate production quotas established by DEA.

19  Specifically, DEA must "determine the total quantity of each basic class of controlled

20  substance listed in Schedule I or II necessary to be manufactured during the

21  following calendar year to provide for the estimated medical, scientific, research and

22  industrial needs of the United States, for lawful export requirements, and for the

23  establishment and maintenance of reserve stocks."  21 C.F.R. § 1303.11(a).   In

13

making this determination, DEA must consider "[p]rojected demand" for such substances.   21 C.F.R. § 1303.11(b).   Thus, to show that the total quantity of prescription opioids that Distributor Defendants distributed was unreasonable, Plaintiff would have to show that the annual aggregate production quotas set by DEA, pursuant to a federal statute, were themselves unreasonable.[6]

27.   The federal questions presented by Plaintiff's claims therefore are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

28.   ***First***, Plaintiff's state law claims "allege[] that [Defendants] violated a duty supplied by federal law" and thus "necessarily raise[s] a stated federal issue." *Commc'ns Mgmt. Servs., LLC v. Qwest Corp.*, 726 F. App'x 538, 540 (9th Cir. 2018); *see also Rhode Island Fishermen's All.*, 585 F.3d at 49 (federal issue necessarily raised where "the[ ] asserted right to relief under state law requires resolution of a federal question"); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (federal question necessarily raised where "the right to relief depends upon the construction or application of federal law." (citation omitted)); *see also N. Carolina by & through N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the

---

[6] Moreover, 21 U.S.C. § 827(d)(1) requires Distributor Defendants to report to DEA "every sale, delivery or other disposal" by them of prescription opioids.  In other words, it has been the case for years that each Distributor Defendants already has reported to DEA the total volume of prescription opioids it distributed.  To succeed on its theory of liability that Distributor Defendants should have recognized and reported that the total volume of prescription opioids was unreasonable, Plaintiff would have to show that Distributor Defendants' existing reporting to DEA was inadequate as a matter of federal regulation.

14

allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

29.     As pled, Plaintiff's claims against Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties under federal law by failing to stop shipments of otherwise lawful orders of controlled substances into Arizona.

30.     For example, in pleading negligent distribution, Plaintiff alleges that Distributor Defendants breached "the standard of care established under Arizona law and the Controlled Substance Act ("CSA") and implementing regulations[.]" Compl. ¶ 906.  In particular, Distributor Defendants are alleged to have "distributed opioids in an improper manner by . . . c. Choosing not to or failing to effectively monitor for suspicious orders; d. Choosing not to or failing to report suspicious orders; [and] e. Choosing not to or failing to stop or suspend shipments of suspicious orders[.]" Compl. ¶ 906-08.  However, Plaintiff does not and cannot identify a state law source for the duty "to stop or suspend shipments of suspicious orders[,]" the sole source of

15

which is the federal CSA.[7]  "Thus, it is not logically possible for the plaintiffs to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" required Distributor Defendants to report and halt shipments of suspicious orders for prescription opioids under the circumstances. *Rhode Island Fishermen's All.*, 585 F.3d at 49.  "That is enough to make out a federal question." *Id.*

31.    While plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by ***exclusive*** reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here alleges violations of federal law as the basis for its state-law claims.[8]  Tellingly, Plaintiff cites extensively

---

[7]  None of the Arizona laws or regulations that Plaintiff cites establishes an independent state law duty to refuse to fill suspicious orders of prescription drugs. Plaintiff contends that the federal CSA is "incorporated" into Arizona's Uniform Controlled Substances Act, A.R.S. § 36-2501, *et seq.*, and Arizona rules A.A.C. R4-23-604 and A.A.C.  *See, e.g.*, Compl. ¶ 847.  But to the extent Plaintiff alleges that the Defendants' violation of this provision is based on a violation of "applicable federal law," the Complaint raises a claim that necessarily requires the Court to interpret, construe, and apply federal law.  *See Merrell Dow*, 478 U.S. at 808-09. Furthermore, while Arizona's CSA requires distributors to be "registrants" under the federal CSA, it imposes no independent duties with respect to suspicious orders. Similarly, A.A.C. R4-23-604 applies solely to drug manufacturers, while A.A.C. R4-26-605 requires only that distributors comply with federal law in the record-keeping, quality control, and quarantine of drugs.  Neither of these regulations impose any duty independent of federal law with respect to halting or refusing to ship suspicious orders.

[8]  Furthermore, it is not necessary for federal jurisdiction that AmerisourceBergen establish that all of Plaintiff's counts against it raise a federal question.  Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against Distributor Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also Rhode Island Fishermen's All.* 585 F.3d

16

to federal laws and regulations in its attempts to establish a duty to report suspicious orders and prevent opioid diversion. *See, e.g.*, Compl. ¶¶ 541-49, 587, 641, 655-57, 801, 847, 908, 974.

32. In sum, the Complaint necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA.

33. As noted, the Complaint also raises a federal issue because it implicates the actions of a federal agency. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) ("The dispute [in *Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases."). Specifically, while Plaintiff alleges that the total volume of prescription opioids distributed by Distributor Defendants was unreasonable or suspicious, that figure turns on production quotas set by DEA. Plaintiff's theory of liability thus calls into question the validity of DEA's determinations under federal law. *See Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co.*, 29 F. Supp. 3d 808, 862 (E.D. La. 2014) ("While Plaintiff may not be expressly challenging a specific action of a federal agency, the breadth of Plaintiff's claims amounts to a collateral attack on an entire regulatory scheme."); *McKay v. City & Cty. of San Francisco*, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (concluding that complaint necessarily

_____

at 48 ("[I]f the district court had original jurisdiction over any one of these causes of action, then it had supplemental jurisdiction over the rest.").

17

raises federal issue where "plaintiffs' claims are 'inescapably intertwined' with a collateral attack on an [agency] order").

34.    **Second**, this federal issue is "actually disputed" because the parties disagree as to the scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA.  Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

35.    **Third**, the federal issue presented by Plaintiff's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (citation omitted); *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) ("[A] federal issue may also be substantial where the resolution of the issue has 'broader significance . . . for the Federal Government.'" (quoting *Gunn*, 568 U.S. at 260)).  As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.

6295145v1(1.912)

36.     Plaintiff's theories of Distributor Defendants' liability necessarily require that a court determine the scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation.  Compl. ¶ 801 ("Specifically, through the CSA, which created a closed system of distribution for controlled substances, Congress established an enterprise for good.  CSA imposes a reporting duty that cuts across company lines.  Regulations adopted under the CSA require that companies who are entrusted with permission to operate with within this system cannot simply operate as competitive in an anything goes profit-maximizing market.").  Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control."  H.R. Rep. No. 1444, 91st Cong. (2nd Sess. 1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

37.     Plaintiff's theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).

38.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action.  In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not*

19

foreclose federal-question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one."  *Grable*, 545 U.S. at 317; *see also, e.g.*, *Ranck v. Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

39.    The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."  21 U.S.C. § 801.  Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction"); *Rhode Island Fishermen's All.*, 585 F.3d at 51 ("[T]here is a substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum offers.").  Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution

20

of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable.*" *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016).

40.    Removal is particularly appropriate here because Plaintiff's action is but one of more than 1,150 similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. *See MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013) ("[A] question that will control many other cases is more likely to be a substantial federal question."). The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[9]

41.    ***Fourth***, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA— applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

---

[9] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

21

42.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315–18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question.  Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (citation omitted)); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck* 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

43.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether

1   to retain the non-federal claims against Distributor Defendants and Marketing

2   Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

3   **V.    Procedural Requirements**

4        44.    This Notice of Removal has been timely filed within 30 days date of

5   service, in accordance with 28 U.S.C. § 1446(b).

6        45.    In accordance with Local Rule 3.6(a), the most recent version of the

7   docket from the State Court Action is attached as **Exhibit 3**.

8        46.    In accordance with 28 U.S.C. § 1446(d) and Local Rule 3.6(a), a copy

9   of this Notice of Removal has been filed with the Clerk of the Court for Pima County

10  Superior Court of the State of Arizona and notice has been sent to Plaintiff's counsel.

11       47.    In accordance with 28 U.S.C. § 1446(a), and Local Rule 3.6(b), true

12  and correct copies of all pleadings and other documents that were previously filed in

13  the State Court Action, as well as a verification that they are true and correct copies ,

14  are being filed with this Notice of Removal.  The verification is attached as **Exhibit**

15  **4**.

16       48.    Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been

17  properly joined and served consent to removal of this action.

18       49.    The following Defendants have been served with the Complaint and

19  consent to removal as indicated by their counsel's signatures below: Purdue Pharma

20  L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.; Amneal

21  Pharmaceuticals, Inc.;[10] Teva Pharmaceuticals, USA, Inc.; Cephalon, Inc.;

22

23

---

[10] Amneal Pharmaceutical, Inc. disputes that process was sufficient or proper.

23

Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica Inc. n/k/a/ Janssen Pharmaceuticals, Inc.; Abbott Laboratories; Abbott Laboratories Inc.; Depomed, Inc.; Endo Pharmaceuticals Inc.; Insys Therapeutics, Inc.; Watson Laboratories, Inc.; Actavis Pharma, Inc. f/k/a/ Watson Pharma, Inc.; Mallinckrodt LLC; SpecGx LLC; AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; McKesson Corporation; Anda, Inc.; H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.; and Henry Schein, Inc.

50.     Although the following Defendants have not been served, and thus their consent to removal is not required, the Defendants nonetheless consent to removal as indicated by their counsels' signatures below: Noramco, Inc.; Endo Health Solutions Inc.;[11] Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.[12]; and Mallinckrodt plc.[13] Actavis LLC cannot confirm service but nevertheless consents to removal.

51.     By filing this Notice of Removal, AmerisourceBergen and the consenting Defendants expressly reserve, and do not waive, any and all defenses that

---

[11] Although the state court docket reflects a purported proof of service on Endo Health Solutions Inc., Endo Health Solutions Inc. has no record of such service and therefore disputes that it has been served.  Nonetheless, Endo Health Solutions Inc. consents to removal.

[12] Although the state court docket reflects a purported proof of service on Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc., that document was not served on its registered agent, but on the registered agent for another company.  Therefore, Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. disputes that purported service was effective or proper.  Nonetheless, Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. consents to removal.

[13] Mallinckrodt plc, an Irish public limited company, disputes that it has been served, but consents to this notice out of an abundance of caution and expressly reserves all defenses, including those related to personal jurisdiction and service of process.

24

may be available to them, including those related to personal jurisdiction and service of process.

52.    If any question arises as to propriety of removal to this Court, AmerisourceBergen requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

53.    AmerisourceBergen reserves the right to amend or supplement this Notice.

**WHEREFORE**, AmerisourceBergen removes this action, pending in the Superior Court of the State of Arizona in and for the County of Pima, Case No. C20184213, to this Court.

DATED this 24th day of September, 2018.

**JENNINGS, STROUSS & SALMON, P.L.C.**

By: */s/John J. Kastner, Jr.*
    John J. Kastner, Jr.
    *Attorneys for Defendants*
    *AmerisourceBergen Drug Corporation*

**CONSENTS TO REMOVAL**

1
/s/ Jae Hong Lee
Mark S. Cheffo*

2
Hayden A. Coleman*
Jae Hong Lee*

3
DECHERT LLP
Three Bryant Park

4
1095 Avenue of the Americas
New York, NY 10036-6797

5
Tel: (212) 698-3500
Fax: (212) 698-3599

6
Mark.Cheffo@dechert.com
Hayden.Coleman@dechert.com

7
Jae.Lee@dechert.com

8
*denotes national counsel who will seek
pro hac vice admission

9

Counsel for Purdue Pharma L.P., Purdue

10
Pharma Inc., and The Purdue Frederick
Company, Inc.

11
/s/ Paul J. Cosgrove

12
Paul J. Cosgrove*
ULMER & BERNE-CINCINNATI

13
Ste. 2800
600 Vine Street

14
Cincinnati, OH 45202
Tel: 513 698-5034

15
Fax: (513_ 698-5035
pcosgrove@ulmer.com

16

*denotes national counsel who will seek

17
pro hac vice admission

18
Counsel for Amneal Pharmaceuticals, Inc

19

20

21

22

23

26

6295145v1(1.912)

1
                                         */s/ Christina M. Vitale*

2
                                         Christina M. Vitale
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St #4000

3
Houston, TX 77002
(713) 890-5764

4
christina.vitale@morganlewis.com

5
James Collie IV*
MORGAN, LEWIS & BOCKIUS LLP

6
600 Anton Blvd
Costa Mesa, CA 92626

7
(949) 399-7199
collie.james@morganlewis.com

8

9
Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street

10
Philadelphia, PA 19103
(215) 963-5000

11
steven.reed@morganlewis.com

12
Brian M. Ercole*
MORGAN, LEWIS & BOCKIUS LLP

13
200 S. Biscayne Blvd., Suite 5300
Miami, FL  33131-2339

14
brian.ercole@morganlewis.com

15

16
*\* denotes national counsel who will seek
pro hac vice admission*

17
*Attorneys for Teva Pharmaceuticals USA,
Inc.; Cephalon, Inc.; Watson Laboratories,*

18
*Inc.; Actavis LLC and Actavis Pharma, Inc.
f/k/a Watson Pharma, Inc.*

19

20

21

22

23

27

6295145v1(1.912)

1

*/s/ Charles C. Lifland*
Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
clifland@omm.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

*s/ Daniel G. Jarcho*
Daniel G. Jarcho*
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3254
Facsimile: (202) 239-333
daniel.jarcho@alston.com

Cari K. Dawson*
Jenny A. Mendelsohn*
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
cari.dawson@alston.com
jenny.mendelsohn@alston.com

*\*denotes national counsel who will seek pro hac vice admission*

*Attorneys for Noramco, Inc.*

28

1

/s/ John A. McCauley
John A. McCauley*

2

James K. O'Connor*
VENABLE LLP

3

750 E. Pratt Street
Suite 900

4

Baltimore, MD 21202
T:  (410) 244-7655

5

F:  (410) 244-7742
JMcCauley@Venable.com

6

JKO'Connor@Venable.com

7

*denotes national counsel who will seek
pro hac vice admission

8

9

Attorneys for Abbott Laboratories and
Abbott Laboratories Inc.

10

/s/ Kevin M. Sadler
Kevin M. Sadler*

11

Baker Botts LLP
1001 Page Mill Road

12

Building One, Suite 200
Palo Alto, CA 94304-1007

13

Tel: 650.739.7500
Fax: 650.739.7699

14

kevin.sadler@bakerbotts.com

15

Scott D. Powers*
Baker Botts LLLP

16

98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4039

17

Tel: 512.322.2678
Fax: 512.322.8392

18

scott.powers@bakerbotts.com

19

*denotes national counsel who will seek
pro hac vice admission

20

Counsel for Depomed, Inc.

21

22

23

29

1

*/s/ John D. Lombardo*
John D. Lombardo*

2

ARNOLD & PORTER KAYE SCHOLER
LLP

3

777 S. Figueroa Street
44th Floor

4

Los Angeles, CA 90017
(213) 243-4000

5

John.Lombardo@arnoldporter.com

6

*\* denotes national counsel who will seek
pro hac vice admission*

7

8

*Counsel for Endo Health Solutions Inc.,
and Endo Pharmaceuticals Inc.*

9

*/s/ J. Matthew Donohue*
J. Matthew Donohue*

10

Joseph L. Franco*
HOLLAND & KNIGHT LLP

11

2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue

12

Portland, OR 97204
Telephone: (503) 243-2300

13

Facsimile: (503) 241-8014
matt.donohue@hklaw.com

14

joe.franco@hklaw.com

15

*\* denotes national counsel who will seek
pro hac vice admission*

16

*Counsel for Insys Therapeutics, Inc.*

17

18

19

20

21

22

23

30

1

*/s/ Rocky C. Tsai*_____

2

Rocky C. Tsai*
**ROPES & GRAY LLP**

3

Three Embarcadero Center
San Francisco, CA 94111-4006

4

Telephone: (415) 315-6300
Rocky.Tsai@ropesgray.com

5

*\* denotes national counsel who will seek*

6

*pro hac vice admission*

7

*Counsel for Mallinckrodt plc, Mallinckrodt*
*LLC, and SpecGX LLC*

8

*/s/ Enu Mainigi*_____

9

Enu Mainigi*
F. Lane Heard III*

10

Steven M. Pyser*
Ashley W. Hardin*

11

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW

12

Washington, DC 20005
Tel: (202) 434-5000

13

Fax: (202) 434-5029
emainigi@wc.com

14

lheard@wc.com
spyser@wc.com

15

ahardin@wc.com

16

*Counsel for Cardinal Health, Inc.*

17

*\*denotes national counsel who will seek*
*pro hac vice admission*

18

19

20

21

22

23

31

1

*/s/ Daniel J. O'Connor, Jr.*
Daniel J. O'Connor, Jr.

2

Karen Stillwell
O'CONNOR & CAMPBELL, P.C.

3

7955 South Priest Drive
Tempe, Arizona 85284

4

Tel: 602-241-7002
Fax: 602-241-7039

5

Daniel.OConnor@OCCLaw.com
Karen.Stillwell@OCCLaw.com

6

*Counsel for McKesson Corporation*

7

*/s/ James W. Matthews*

8

James W. Matthews*
Katy E. Koski*

9

Redi Kasollja*
FOLEY & LARDNER LLP

10

111 Huntington Avenue
Boston, MA 02199

11

Telephone: 617.342.4000
Facsimile: 617.342.4001

12

jmatthews@foley.com
kkoski@foley.com

13

rkasollja@foley.com

14

*\* denotes national counsel who will seek
pro hac vice admission*

15

16

*Counsel for Anda, Inc.*

17

18

19

20

21

22

23

32

1

*/s/ Kathleen L. Matsoukas*
Kathleen L. Matsoukas*

2

Oni N. Harton*
BARNES & THORNBURG LLP

3

11 South Meridian Street
Indianapolis, Indiana 46204-3535

4

Tel: (317) 231-7332
Fax: (317) 231-7433

5

kathleen.matsoukas@btlaw.com
oni.harton@btlaw.com

6

7

*\* denotes national counsel who will seek
pro hac vice admission*

8

*Counsel for H.D. Smith, LLC f/k/a/ H.D.
Smith Wholesale Drug Co.*

9

*/s/ Adam Weisman*

10

Adam Weisman, Esq. ASP 22086, PCC
65638

11

HINDERAKER RAUH & WEISMAN,
P.L.C.

12

2401 East Speedway Boulevard
Tucson, Arizona 85719

13

Tel: (520) 881-6607
Fax: (520) 881-6775

14

adam@hrtucson.com

15

John P. McDonald*
jmcdonald@lockelord.com

16

C. Scott Jones*
sjones@lockelord.com

17

Brandan J. Montminy*
brandan.montminy@lockelord.com

18

LOCKE LORD LLP
2200 Ross Avenue, Suite 2800

19

Dallas, Texas 75201
Telephone: (214) 740-8000

20

Facsimile: (214) 740-8800

21

*\* denotes national counsel who will seek
pro hac vice admission*

22

*Counsel for Henry Schein, Inc.*

23

33

1

*/s/ Donna Welch*
Donna Welch, P.C.*

2

Martin L. Roth*
Timothy Knapp*

3

KIRKLAND & ELLIS LLP
300 North LaSalle

4

Chicago, Illinois 60654
(312) 862-2000

5

donna.welch@kirkland.com
martin.roth@kirkland.com

6

timothy.knapp@kirkland.com

7

Jennifer G. Levy, P.C.*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW

8

Washington, DC 20005
(202) 879-5000

9

jennifer.levy@kirkland.com

10

*denotes national counsel who will seek pro hac vice admission*

11

*Attorneys for Allergan Finance, LLC. f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*

12

13

The foregoing was electronically filed this 24th day of September,  2018, and a copy electronically served this same

14

date, upon:

15

Steven C. Mitchell
MITCHELL & SPEIGHTS, LLC

16

4854 E. Baseline Road, Suite 103
Mesa, AZ  85206
steve@mitchellspeights.com

17

*Attorneys for Plaintiff*

18

By: */s/ Sonia M. Leon, Legal Assistant*

19

20

21

22

23

6295145v1(1.912)