**MITCHELL & SPEIGHTS, LLC**
Steven C. Mitchell (AZ Bar No. 009775)
Samuel F. Mitchell
(*pro hac vice* to be submitted)
4854 E. Baseline Road, Suite 103
Mesa, AZ 85206
Tel: (602) 244-1520
Fax: (602) 267-9394
Steve@mitchellspeights.com
Sam@mitchellspeights.com

**Attorneys for Plaintiff Tucson Medical Center**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tucson Medical Center, a corporation,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Purdue Pharma L.P., *et al*.,<br><br>　　　　　　　Defendants. | No. 4:18-cv-00481-RCC<br><br>**PLAINTIFF'S EMERGENCY MOTION TO REMAND** |

　　　Plaintiff Tucson Medical Center (sometimes referred to as "Plaintiff"), by and through undersigned counsel, brought this action in state court to remedy the atrocities and despair inflicted by Defendants upon Tucson Medical Center and its Southern Arizona community as a result of Defendants' conduct in creating the opioid epidemic. Tucson Medical Center's claims are based *solely* upon Arizona statutory and common law. Nonetheless, Defendants have improvidently removed this action to this Court, and this case should be summarily and immediately remanded without further briefing.

1

## I. INTRODUCTION

On August 22, 2018, Tucson Medical Center commenced this action, asserting twelves claims, including two Arizona statutory claims and ten Arizona common law claims, against the Defendants. No claims asserted by Plaintiff arise under *any* federal statutes. Among other remedies, Tucson Medical Center seeks injunctive relief, compensatory damages, treble damages, punitive damages, and monies towards abating the nuisance created by Defendants.

Notwithstanding the lack of diversity jurisdiction, the lack of a federal claim, and the lack of any other plausible basis for federal jurisdiction, Defendants have removed this action to this Court. The same litigants have been doing so systematically in state law cases around the country, undeterred by a succession of adverse decisions in which motions to remand have been granted, and in which many federal district courts have expressly rejected the same baseless arguments that they assert in this action. The Defendants and their counsel do so contrary to their ethical obligations as litigants and as officers of the Court, both under Fed. R. Civ. P. 11 and its state law counterparts, and the rules governing the ethical practice of law.

The Defendants have not removed this action because there is a plausible basis for federal jurisdiction. They have done so because they hope to delay it interminably. Specifically, they are trying to force this action to disappear into the traffic jam that is the opioid multi-district litigation ("MDL") pending in the Northern District of Ohio. The Court should move swiftly and decisively to thwart this cynical attempt to abuse the mechanism of removal of claims to federal court, which should be reserved only for those classes of cases that truly belong here.

## II. ARGUMENT

### A. The Court Should Immediately Remand this Action on a Summary Basis Without Further Briefing, or, at a Minimum, Schedule an Expedited Hearing

The Supreme Court has long held that, without jurisdiction, this Court, and any other court, cannot proceed at all in any case. *Ex parte McCardle*, 74 U.S. 506, 514 (1869); *See also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter … is inflexible and without exception, for jurisdiction is power to declare law, and without jurisdiction the court cannot proceed at all in any cause." (internal quotations and citations omitted)). Congress agrees, and has made clear that, if at *any time* it appears that the district court lacks subject matter jurisdiction,[1] the case *shall* be remanded. *See* 28 U.S.C. § 1447(c) (emphasis added). The Court need not wait for a response to this Motion and does not require *any motion at all* - it is well-settled that a Court may remand an action on its own initiative should subject matter jurisdiction be lacking. *Id.*; *See also, e.g., United Investors Life Ins. Co. v. Waddell & Reed Inc.,* 360 F.3d 960 (9th Cir. 2004) (remand order entered *sua sponte,* based on lack of subject matter jurisdiction, is not reviewable on appeal); *Raytheon Co. v. Alliant Techsystems, Inc.*, 2014 WL 29106, at *1 (D. Ariz. Jan. 3, 2014) (it is the duty of the district court to examine on its own motion, whether a case should be remanded to state court and it need not wait for a motion to remand).

Respectfully, Tucson Medical Center asks this Court to summarily remand this action to Pima County Superior Court, or in the alternative, shorten the briefing schedule on this Motion, and hold an expedited hearing pursuant to Fed. R. Civ. P. 6(c). Without a ruling on this Motion, the adjudication of Tucson Medical Center's claims against Defendants, whose wrongful actions created the opioid epidemic in Arizona and continue to consume lives of Arizonans on a daily basis,[2] would be indefinitely delayed.

---

[1] For the reasons stated in Section II(B), *infra*, the Court lacks subject matter jurisdiction over this action.
[2] The opioid epidemic claims the lives of more than two (2) Arizonans per day. *See* Compl. ¶21.

3

An expedited resolution of this Motion is particularly appropriate because Defendants present no valid basis for removal, as the same purported bases for federal jurisdiction have been rejected by courts across the country. The only possible purpose for Defendants to remove the case is to delay the resolution of Plaintiff's claims by orchestrating the transfer of the case into the MDL. An expedited briefing schedule on the Motion is warranted "because the right to litigate in the MDL depends on the existence of federal jurisdiction in the first place." *Mayor & City Council of Baltimore v. Purdue Pharma L.P. et al.*, 2018 WL 1963816, at *3 (D. Mar. Apr. 25, 2018) (citing Manual for Complex Litigation § 20.131 (4th ed. 2004)). "[I]f the federal court has no jurisdiction over a matter, then it can neither stay it nor transfer it to the MDL." *Craft v. United Insurance Co.*, 2002 WL 32509283, at *1 (S.D. Miss. 2002) (collecting cases from Tennessee, West Virginia, Pennsylvania, New Jersey, New York, California and Wisconsin).

Even after motion practice concerning MDL transfer is pending before the JPML, this Court retains the authority[3] and responsibility to evaluate its subject matter jurisdiction. Its "first step should be to make a preliminary assessment of the jurisdictional issue," and, if this first step indicates that removal was improper, "then the court 'should promptly complete its consideration and remand the case to state court'" before the JPML makes a determination as to MDL transfer. *Rutherford v. Merck & Co.,* 428 F. Supp.2d 842, 846 (S.D. Ill. 2006) (quoting *Meyers v. Bayer AG,* 143 F.Supp.2d 1044, 1048 (E.D.

---

[3] This Court's ruling on Tucson Medical Center's Motion to Remand is in *no way* affected by the pendency of a motion for transfer to the MDL. Rule 2.1(d) of the Rules of the Judicial Panel on Multidistrict litigation states:
> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend order and pretrial proceedings in the district court in which the action is pending and *does not in any way limit* the pretrial jurisdiction of that court. (emphasis added)

Accordingly, "[d]uring the pendency of a motion (or show cause order) for transfer, … the court in which the action was filed retains jurisdiction over the case." *See* Manual for Complex Litigation, Fourth, § 20.131 at 220 (citing J.P.M.L. R. P. 1.5; *In re Four Seasons Sec. Laws Litig.*, 362 F. Supp. 574 (J.P.M.L. 1973); *see also Wayman v. Southard*, 23 U.S. 1, 22 (1825) ("The judicial department is invested with jurisdiction in certain specified cases, in all which it has power to render judgment.").

4

Wis.2001)). The Court should follow the lead of those other federal district courts that have expeditiously remanded opioid-related actions before they can be transferred to the MDL Court. *Mayor & City Council of Baltimore*, 2018 WL 1963816, at *3.[4] The cases cited by Defendants (that were transferred by this District to the MDL) are entirely irrelevant because they originated in federal court and there was no threshold challenge to federal subject matter jurisdiction.[5]

If this Court does not act expeditiously, given that the MDL court has placed a moratorium on all motions to remand,[6] Defendants' delay strategy would work successfully to disrupt Plaintiff's pursuit of justice. The delay would impose the most extreme prejudice upon Tucson Medical Center, as well as the southern Arizona community that it serves.

### B. There Is No Federal Subject Matter Jurisdiction

Federal courts are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 552 (2005) (internal quotation omitted). "Federal courts may exercise removal

---

[4] *See also*, e.g., *Estate of Brockel v. Purdue Pharma L.P., et al.*, 1:17-cv-00521-KU-MU, slip op. at 1 (S.D. Ala. Mar. 29, 2018); *Cty. of Falls v. Purdue Pharma, L.P., et al.*, 6:18-cv-00047-RP-JCM, slip op. at 7 (W.D. Tex. Mar. 28, 2018); *Cty. of Delta v. Purdue Pharma, L.P., et al.*, 4:18-cv-00095-ALM, slip op. at 9 (E.D. Tex. Mar. 22, 2018); *Cty. of Dallas v. Purdue Pharma L.P., et al.*, 3:18-cv-00426-M, slip op. at 7 (N.D. Tex. Mar. 7, 2018); *Brooke Cty. Comm'n, et al. v. Purdue Pharma L.P., et al.*, 5:18-cv-00009, slip op. at 17 (N.D. W.Va. Feb. 23, 2018) (granting Motions to Remand in eight cases brought by counties in West Virginia); *New Hampshire v. Purdue Pharma, et al.*, 1:17-cv-00427-PB, slip op. at 11 (D.N.H. Jan. 9, 2018); *Cty. of Hopkins v. Endo Health Solutions Inc., et al.*, 4:17-cv-00845-ALM, slip op. at 2 (E.D. Tex. Dec. 20, 2017); *Staubus v. Purdue Pharma, L.P. et al.*, L.P., et al., 2:17-cv-122-TAV-CLC, 2017 WL 4767688 , at *8 (E.D. Tenn. Oct. 20, 2017). *Accord*, e.g., *Baker v. Air Liquid Systems, Inc.,* 2011 WL 499963 (S.D. Ill. Feb. 8, 2011) (remanding action during pendency of transfer motion practice before JPML); *Sandoval v. Bausch and Lomb, Inc.*, 2008 WL 11343014 (C.D. Cal. Aug. 8, 2008) (same); *Moton v. Bayer Corp.*, 2005 WL 1653731 (S.D. Ala. July 8, 2005) (same; citing cases).
[5] *See* Notice of Removal, at ¶8 n. 2 (citing *Kingman, City of v. Purdue Pharma LP*, No. 3:18-cv-08191 (D. Ariz.), *Hopkins v. Purdue Pharma LP*, No. 2:18-cv-02646 (D. Ariz.), *Northwest Arizona Employee Benefit Trust v. Purdue Pharma LP*, No. 3:18-cv-08190 (D. Ariz.) and *National Roofers Union & Employers Joint Health & Welfare Fund v. Purdue Pharma LP*, No. 2:18-cv-01949 (D. Ariz.).
[6] *See* **Ex. A,** *In re: Nat'l Prescription Opiate Litigation*, No. 17-md-2804, Order Regarding Remands (N.D. Ohio Feb. 16, 2018).

jurisdiction over a case only if subject matter jurisdiction exists." *Sherman & Howard LLC v. Bruno*, 2018 WL 1980939, at *1 (D. Ariz. April 27, 2018) (citing *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004)).

"[R]emoval is entirely a creature of statute" and, as such it is "to be strictly construed." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002); *See also Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988) (courts shall strictly construe the removal statute against removal jurisdiction); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985) (same). There is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). "It is the defendant's burden to establish proper removal by a preponderance of the evidence." *Shimomura v. American Medical Response Inc.*, 2018 WL 2057636, at *1 (D. Ariz. May 3, 2018) (citing *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010)). As such, the removing "defendant always has the burden of establishing that removal is proper." *Id.* And, any uncertainty or doubt as to the right of removal *shall* be resolved in favor of remand. *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *See also Bertrand v. Aventis Pasteur Laboratories, Inc.*, 226 F.Supp.2d 1206, 1210 (D. Ariz. 2002) (ambiguities are resolved in favor of remand); *IBEW, Local Union 640 v. Dueck*, 148 F.Supp.2d 955, 958 (D. Ariz. 2000) (same).[7]

---

[7] Footnote 3 in Defendants' Notice of Removal arguing for the opposite position against all of the authorities that are cited here. In addition, Defendants cited to no authority from this District or within the 9th Circuit to support the proposition that "[a] defendant need not overcome any artificial presumptions against removal or in favor of remand." The cases cited by Defendants did not even discuss the issue of defendants' burden to establish that the removal is proper, thus, Defendants could not and did not support their argument. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 693 (2003) (the Supreme Court discussed the issue of "whether the provision of the Fair Labor Standards Act of 1938 (FLSA or Act) . . . bars removal of a suit from state to federal court"); *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 370 (2012) (the Supreme Court discussed the issue of "whether Congress' provision for private actions to enforce the TCPA renders state courts the exclusive arbiters of such actions" and held, "federal and state courts have concurrent jurisdiction over private suits arising under the TCPA").

Tucson Medical Center asserts only state-law causes of action. As such, this action is not embraced by the plain terms of the removal statute, which *only* permits removal if federal courts have original jurisdiction. *See* 28 U.S.C. § 1441(a).

Nevertheless, on September 24, 2018, Defendants filed a Notice of Removal asserting federal subject matter jurisdiction under 28 U.S.C. § 1331. *See* Notice of Removal ("Not. Removal) at ¶14.

Defendants contend that their duties arise *solely* under the federal Controlled Substances Act ("FCSA") and its implementing regulations. As such, they argue that this Court has jurisdiction because "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Not. Removal at ¶18.

This meritless argument has been expressly and repeatedly rejected by the courts.[8] None of the elements are met in Plaintiff's case.

Plaintiff is the master to decide what law it will rely upon, *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913), and may prevent removal by choosing not to plead a federal claim even if one is available. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, a suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based" on federal law. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). "Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 115 (1936). "The mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction," and such jurisdiction will only lie in a very "narrow" category of cases which "necessarily rest" on a "substantial federal question." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 (1986). District courts therefore must exercise "prudence and restraint" when determining whether a state cause of action presents a substantial federal question because "determinations about

---

[8] *See* Footnote 3.

federal jurisdiction require sensitive judgment about congressional intent, judicial power, and the federal system." *Id.* at 810.

Thus far, the courts have *unanimously* and *repeatedly* rejected the efforts by pharmaceutical manufacturers and distributors to characterize state law claims related to the opioid crisis as presenting a "federal question," and have remanded such actions back to state court.  *See, e.g., In Re: Nat'l Prescription Opiate Litig.,* MDL No. 2804 [Doc. # 899] (N.D. Ohio Aug, 23, 2018) (remanding action brought by the State of Montana to a state court in Montana); *Weber County, Utah v. Purdue Pharma, L.P.,* 2018 WL 3747846 (D. Utah Aug. 7, 2018); *Uintah County, Utah v. Purdue Pharma, L.P.,* 2018 WL 3747847 (D. Utah Aug. 7, 2018);  *New Mexico ex rel. Balderas v. Purdue Pharma, L.P., et al.*, 2018 WL 2942346, at *4 (D.N.M. June 12, 2018);  *Delaware v. Purdue Pharma L.P.*, 2018 WL 1942363 (D. Del. Apr. 25, 2018); *State of West Virginia ex rel. Morrisey v. McKesson Corp.*, 2017 WL 357307 (S.D. W.Va. Jan. 24, 2018).

In every one of these cases, the defendants contended that state law claims necessarily presented a "substantial federal question" because the claims somehow arose under the FCSA or otherwise necessarily were based, somehow, on the federal regulatory scheme pertaining to pharmaceutical products.  In every one of these cases, the defendants lost.  Yet they keep removing cases in which similar state law claims are asserted.

Here, too, Plaintiff's claims, and allegations contained within its Complaint are *all* founded upon state-law, in this instance, the laws of Arizona:

a. Claim I is a cause of action for violation of Arizona's RICO statute, A.R.S. § 13-2314.04;

b. Claim II is a cause of action for violation of Arizona's Consumer Fraud Act pursuant to A.R.S. § 44-1522;

c. Claim III is a cause of action for negligence under Arizona common law;

d. Claim IV is a cause of action for wanton negligence under Arizona common law;

e. Claim V is a cause of action for negligence *per se* under Arizona common law;

f. Claim VI is a cause of action for negligent marketing under Arizona common law;

g. Claim VII is a cause of action for negligent distribution under Arizona common law;

h. Claim VIII is a cause of action for nuisance under Arizona common law;

i. Claim IX is a cause of action for unjust enrichment under Arizona common law;

j. Claim X is a cause of action for fraud and deceit under Arizona common law;

k. Claim XI is a cause of action for civil conspiracy to commit fraud and maintain a nuisance under Arizona common law; and

l. Claim XII is a cause of action for fraudulent concealment under Arizona common law.

*See* Compl., ¶¶. 235-280.

Defendants argue that the Complaint arises under federal law, but the basis for its contention is the scant references to a federal statute, the federal Controlled Substance Act, in the Complaint. *See* Not. Removal at ¶24. Their contentions are baseless.

Federal jurisdiction over a state law claim, will lie *only* over a very narrow category of claims when a federal issue is: necessary raised and actually disputed, substantial to the federal system as a whole, *and* capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 586 U.S. 251, 258-60 (2013).

First, the FCSA "provides no federal cause of action." *New Mexico*, 2018 WL 2942346, at *4. The fact that there is no cause of action under the FCSA itself strongly militates against the notion that state law claims relating to its subject matter somehow necessarily implicate substantial federal questions. The "congressional determination [that] there should be no federal remedy for the violation of th[e] federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. Because Congress did not create a private federal remedy for violations of the FCSA, Defendants must establish

9

"more than a federal element to open the arising under door." *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *New Mexico*, 2018 WL 2943246 at *4. "When we conclude that Congress has decided not to provide a particular federal remedy, we are not free to [']supplement['] that decision in a way that makes it [']meaningless.[']" *Merrell Dow Pharm.*, 478 U.S. at 812, Fn. 10.

Second, and more importantly, when a claim may be supported by a federal law theory which establishes federal jurisdiction but *also* an alternative theory which would *not* require resolution of "substantial federal questions," federal jurisdiction *does not exist. Rains v. Criterions Sys. Inc.,* 80 F.3d 339, 346 (9th Cir. 1996); *See also Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 810 (1988) (if a claim is supported not only by a theory establishing federal subject matter jurisdiction but *also* by an alternative theory which would *not* establish such jurisdiction, then federal subject matter jurisdiction *does not exist*)). Mere references to federal laws and regulations simply "do [] not operate to unlock the federal courts." *West Virginia*, 2017 WL 357307, at *8. Plaintiff's Complaint implicates numerous statutory and common law duties arising under Arizona law.[9] *Accord Delaware,* 2018 WL 1942363, at *2 ("Although the complaint addresses some duties or requirements under the FCSA, the complaint also lists several other duties and standards

---

[9] *See, e.g.,* Compl. ¶ 537 ("Defendants are all required to register as either manufacturers or distributors pursuant to A.R.S. § 36-2522 (A); A.A.C. R4-23-604; A.A.C. R4-26-605."); *See also* Compl. ¶ 540 ("Arizona law requires that ['] registrants ['] of Schedule II drugs, including opioids, must ['] maintain effective controls against the diversion of controlled substances or precursor chemicals to unauthorized persons or entities.['] A.R.S. § 32-1901.01. *See also* A.A.C. R4-23-604; A.A.C. R4-23-605; A.A.C. R4-23-607."); Compl. ¶ 684 ("Like the Distributor Defendants, the Marketing Defendants were required to register with the Arizona Board of Pharmacy and the DEA to manufacture Schedule II controlled substances, like prescription opioids. A.R.S. § 13-3401; A.R.S. § 32-1927.03." "A requirement of such registration is the [']to maintain effective controls against the diversion of controlled substances or precursor chemicals to unauthorized persons or entities.['] A.R.S. § 32-1901.01(A) (26)); Compl. ¶ 829 ("[The RICO] claim for relief alleges violations of A.R.S. § 13-2314.04(A)"); Compl. ¶ 845 ("Defendants engaged in deception, deceptive or unfair acts or practices, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of prescription drugs in violations of the Arizona Consumer Fraud Act, A.R.S. § 44-1522(A)"); Compl. ¶¶530, 540 (citing Arizona Common law duty to monitor, detect, investigate, refuse to fill, and report suspicious orders).

that arise solely under state statutory and common law"). The Complaint, like others asserted against the Defendants elsewhere, cannot be plausibly construed as asserting claims that necessarily require resolution of substantial federal questions because it invokes many duties and requirements arising under state law. It is also inaccurate to argue that Plaintiff raised "a substantial federal question" by seeking to enforce FCSA. Not. Removal at ¶38. As shown above, Plaintiff's claims were based exclusively on Arizona statutes, and Plaintiff sought only to enforce their right under these statutes as stated in the Complaint.

Defendants argument that the DEA letters referenced in the Complaint present a "substantial" federal question is wholly disingenuous. The letters merely "warned" and "reminded" Defendants not to fill suspicious orders. Recently in West Virginia the court called into question whether these very same letters had any "binding effect," particularly when McKesson—Defendant in this action—conceded that the letters were in fact "not binding." *West Virginia*, 2017 WL 357307, at *4, *8. Thus, Plaintiff's claims do not necessarily hinge on *any* putative duty owed under these letters since Plaintiff has pleaded numerous other state law duties. *Id*. at *8.

Defendants suggest that because certain Arizona statutes cited in the Complaint incorporate federal standards, that somehow creates a federal question. Notice of Removal, at ¶ 30 n.7 (citing *Merrell Dow*, 478 U.S. at 808-09). This is simply wrong. In fact, the Supreme Court in *Merrell Dow* flatly "rejected" the "suggestion" (that had previously gained traction in some courts) that "where a state law incorporates federal law as the applicable state standard… this is enough to create federal-question jurisdiction…." *Oliver v. Trunkline Gas Co.,* 796 F.2d 86, 89 (5th Cir. 1986). In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,* 545 U.S. 308 (2005), the Supreme Court reiterated this conclusion, pointing out that "if the federal labeling standard without a federal cause of action could get a state claim into federal court, *so could any other federal standard without a federal cause of action.*" *Id*. at 318 (emphasis added).

In any event, even if one or more of Plaintiff's state law claims were premised *in part* on violations of federal law, which they are not, that, by itself would not be enough to invoke federal jurisdiction. *In re Lifelock,* 2009 WL 2222711 at *4 (D. Ariz. July 24, 2009). [T]he presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *In Re: Nat'l Prescription Opiate Litig.,* MDL No. 2804 [Doc. # 899], at 5 (N.D. Ohio Aug. 23, 2018) (quoting *Merrell Dow Pharm.*, 478 U.S. at 814). The state court "is competent to apply federal law, to the extent it is relevant," particularly, when as here, the claims pleaded are governed by state law. *Empire HealthChoice*, 547 U.S. at 700-01.

In sum, the Pima County Superior Court need not "necessarily" resolve any "substantial" federal question to adjudicate Plaintiff's claims, much less one that would rise to the level of significant public importance "substantial to the federal system as a whole" as defined in *Gunn*.

Defendants also cited to the "well-pleaded complaint rule." Not. Removal at ¶16 (citing *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002)). The rule requires that the Court reads Plaintiff's claims as they appear in Plaintiff's own statements in the complaint in determining whether the claims arose under any federal law. *See Holmes Grp., Inc.*, 535 U.S. at 830 (citation omitted). "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.,* 482 U.S. at 392; *See also Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (same). ""By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States." *Gully*, 299 U.S. at 116. Defendants' own authority does not state otherwise. *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir. 2009) ("To satisfy the rule, the plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed."). As

shown above, Plaintiff's pleaded the claims based *solely* upon Arizona statutory and common law. Thus, the "well-pleaded complaint rule" provides no support for removal.[10]

### III. CONCLUSION

Justice delayed is Justice denied.[11] This legal maxim is one of the fundamental principles of our court system. Just as criminal defendants are ensured the right to a speedy trial, so too is Tucson Medical Center. This lawsuit is of extreme significance to the people of the Great State of Arizona, and for reasons set forth above, this action should be promptly remanded to Pima County Superior Court pursuant to 28 U.S.C. § 1447(c).

DATED this 25th day of September, 2018.

Respectfully submitted,

/s/ *Steven C. Mitchell*
Steven C. Mitchell (AZ Bar No. 009775)
Samuel F. Mitchell

---

[10] *See also Federal Nat'l Mortg. Ass'n v. Watkins*, 2012 WL 983680, at *1 (D. Ariz. Mar. 22, 2012) ("A review of the complaint, however, reveals that it is a straightforward [action under state law] . . . . Defendants may be able to assert a valid federal defense . . . . Nonetheless, the assertion of a federal defense to a state-law claim does not convert the state-law claim into one [']arising under[']federal law for purposes of federal question jurisdiction."); *Wells Fargo Bank v. 223 Wittmann, LLC*, 2011 WL 13233438, at *2 (D. Ariz. Mar. 31, 2003) ("A Court has [']arising under['] jurisdiction for [']only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.[']") (citing *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean, Geological Formation*, 524 F.3d 1090, 1100 (9th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).

[11] As Chief Justice Warren Burger eloquently stated, "A sense of confidence in the courts is essential to maintain the fabric of ordered liberty for a free people and three things could destroy that confidence and do incalculable damage to society: that people come to believe that *inefficiency and delay* will drain even a just judgment of its value; that people who have long been exploited in the smaller transactions of daily life come to believe that courts cannot vindicate their legal rights from fraud and over-reaching; that people come to believe the law – in a larger sense – cannot fulfill its primary function to protect them and their families in their homes, at their work, and on public streets." Warren E. Burger, "What's Wrong With the Courts: The Chief Justice Speaks Out," *U.S. News & World Report* (Vol. 69, No. 8, 1970) 68, 71 (address to American Bar Association meeting, Aug. 10, 1970) (emphasis added).

(*pro hac vice* to be submitted)
**MITCHELL & SPEIGHTS,** LLC
4854 E. Baseline Road, Suite 103
Mesa, AZ 85206
Tel: (602) 244-1520
Fax: (602) 267-9394
steve@mitchellspeights.com
sam@mitchellspeights.com

Linda Singer
(*pro hac vice* to be submitted)
**MOTLEY RICE LLC**
401 9th Street NW
Suite 1001
Washington, DC 20004
Tel: (202) 386-9626
Fax: (202) 386-9622
lsinger@motleyrice.com

John W. ("Don") Barrett
(*pro hac vice* to be submitted)
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Tel: (662) 834-2488
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September 2018, I caused the foregoing document to be filed with the Clerk of this Court via the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *Steven C. Mitchell*
Steven C. Mitchell