Daniel J. O'Connor, Jr., Bar No. 010081
Karen J. Stillwell, Bar No. 022711
**O'CONNOR & CAMPBELL, P.C.**
7955 South Priest Drive
Tempe, Arizona 85284
daniel.oconnor@occlaw.com
karen.stillwell@occlaw.com
(602) 241-7000

Attorneys for Defendant McKesson Corporation

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tucson Medical Center, a corporation,<br><br>　　　　　　Plaintiff,<br>　　vs.<br><br>Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company Inc.; Amneal Pharmaceuticals, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Abbott Laboratories; Abbott Laboratories, Inc.; Depomed, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc; Mallinckrodt, LLC; Insys Therapeutics, Inc.; Mallinckrodt PLC; SPECGX; Allergan PLC f/k/a Actavis PLS; Watson Pharmaceuticals, Inc. n/k/a Actavis Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Anda, Inc.; H.D. Smith, | Case No.:<br><br>**DEFENDANT MCKESSON CORPORATION'S SUPPLEMENTAL NOTICE OF REMOVAL**<br><br>(Removal from Pima County Superior Court, Cause Number C20184213) |

LLC f/k/a H.D. Smith Wholesale Drug Co.; Henry Schein, Inc.; McKesson Corporation; AmerisourceBergen Drug Corporation; and Cardinal Health, Inc.
                    Defendants.

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1442 and 1446, Defendant McKesson Corporation ("McKesson"), by and through undersigned counsel, submits this Supplemental Notice of Removal to provide additional grounds for removal of the above-captioned action from the Superior Court of the State of Arizona in and for the County of Pima, Arizona, to the United States District Court for the District of Arizona. As grounds for removal, McKesson states:

**I.    NATURE OF REMOVED ACTION**

1.    On August 22, 2018, Tucson Medical Center ("Plaintiff") filed *Tucson Medical Center v. Purdue Pharma L.P., et al.* in the Superior Court of the State of Arizona in and for the County of Pima. The court assigned the case Docket No. C20184213. A true and correct copy of the Complaint is attached hereto as **Exhibit 1** ("Compl.").

2.    On September 24, 2018, Defendant AmerisourceBergen Drug Corporation ("ABDC") removed this action to this Court on the basis that Plaintiff's claims present a substantial federal question under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801, *et seq.* At the time of this filing, a civil case number for ABDC's removal was not yet generated by the Court's CM/ECF system.

3.    McKesson submits this Supplemental Notice of Removal to provide additional grounds for federal jurisdiction in the same state-court action as the

one removed by ABDC. However, because the federal docket opened by ABDC's Notice of Removal was not yet assigned a case number at the time of this filing, McKesson was unable to file this paper on that docket and, therefore, McKesson filed this Supplemental Notice of Removal independently, with a separate civil cover sheet. McKesson will promptly contact the Court to ensure that the federal docket created by its Supplemental Notice of Removal is merged with the federal docket created by ABDC's Notice of Removal, as each removal notice relates to the same state-court action.

4. McKesson's supplemental grounds for federal removal jurisdiction are that this case should be removed under the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1), because Plaintiff necessarily alleges that McKesson's distribution of opioids to Veterans Affairs facilities, which McKesson carries out under the direction of a federal officer, has resulted in disproportionate opioid addiction among veterans, and therefore disproportionate unreimbursed care from Plaintiff.

5. The Complaint alleges that McKesson, as a distributor of prescription medications, is liable under Arizona law for the harms to the Plaintiff purportedly caused by McKesson's distributions of prescription opioids to the area served by Plaintiff—southern Arizona, specifically Pima County. *See, e.g.*, Compl. ¶ 45 (alleging that the "massive quantities of opioids that flooded into Arizona as a result of Defendants' wrongful conduct . . . has devastated communities across this state, especially the southern Arizona community served by Tucson Medical Center."). According to the Complaint, Plaintiff has suffered financial damages due to the costs of unreimbursed medical costs for "treatment of patients with opioid-related conditions [who] seek treatment from Tucson Medical Center," Compl. ¶ 62, for "surgical procedures and other care that have

been and are more complex and expensive than would otherwise be the case if the patients were not opioid affected," Compl. ¶ 63, and for "costs related to the time and expenses" to treat individuals "with opioid addiction [who] have presented and continue to Tucson Medical Center claiming to have illnesses and medical problems in an effort to obtain opioids." Compl. ¶ 64.

6. Plaintiff focuses particular attention on veterans, repeatedly alleging that veterans are disproportionately prescribed opioids for pain, are disproportionately marketed prescription opioids, and disproportionately suffer from adverse opioid-related outcomes. Specifically, the Complaint includes the following allegations:

    a. "The Marketing Defendants specifically targeted their marketing and two particularly vulnerable populations—the elderly and veterans—who tend to suffer from chronic pain." Compl. ¶ 483.

    b. "According to a study published in the 2013 Journal of American Medicine, veterans returning from Iraq and Afghanistan who were prescribed opioids have a higher incidence of adverse clinical outcomes, such as overdoses and self-inflicted and accidental injuries. A 2008 survey showed that prescription drug misuse among military personnel doubled from 2002 to 2005, and then nearly tripled again over the next three years. Veterans are twice as likely as non-veterans to die from an opioid overdose." Compl. ¶ 485.

    c. "According to a VA Office of Inspector General Report, 92.6% of veterans who were prescribed opioid drugs were also prescribed benzodiazepines, despite the increased danger of respiratory depression from the two drugs together." Compl. ¶ 468.

       d.     "Opioid prescriptions have dramatically increased for veterans . . . in 2009, military doctors wrote 3.8 million prescriptions for narcotic pain pills—four times as many as they did in 2001." Compl. ¶ 487.

       e.     Including as alleged deceptive marketing statements those related to "[t]argeting veterans by sponsoring and disseminating patient education marketing materials that contained deceptive statements concerning the use of opioids to treat chronic non-cancer pain." Compl. ¶¶ 516(n), 520(m).

       f.     Including as alleged RICO actions by Marketing Defendants "[e]ncouraging Front Groups to disseminate their pro-opioid messages to groups . . . such as veterans." Compl. ¶ 780(o)

7. Although the allegations listed above primarily relate to alleged actions of Marketing Defendants, the Complaint explicitly alleges that distributors, such as McKesson, acted in concert with Marketing Defendants in order to increase the total volume of opioids distributed to patients in southern Arizona as a whole—with no exceptions for veterans. *See, e.g.*, Compl. ¶ 580 ("The Marketing and Distributor Defendants were not two separate groups operating in isolation or two groups forced to work together in a closed system. The Defendants operated together as a united entity. . . .").

8. Furthermore, the Complaint puts at issue the *total volume* of opioids distributed in the region by McKesson and other distributors. *See, e.g.*, Compl. ¶ 50 ("Defendants' practice of continually filling opioid prescriptions . . . has enabled an oversupply of opioids to communities, including the community that Tucson Medical Center serves."); Compl. ¶ 639 ("The sheer volume of prescription opioids distributed to pharmacies in various areas . . . was excessive

- 5 -

for the medical need of the community and facially suspicious.").

9. In sum, Plaintiff's Complaint seeks to hold liable the opioid industry *as a whole* for any and all unreimbursed opioid-related treatment to any and all of its patient population. This not only necessarily includes veterans, but Plaintiff's Complaint explicitly alleges that it *disproportionately* includes veterans.

10. McKesson removes this action under 28 U.S.C. § 1442(a)(1). As set forth more fully below, the Complaint's allegations against McKesson relate to and necessarily implicate McKesson's distribution of pharmaceuticals to the U.S. Department of Veterans Affairs, the State Veterans Homes, the VA Commercial Repackaging Center, and the facilities of eight other federal organizations. McKesson distributes pharmaceuticals, including opioids, to these customers at the direction of a federal officer under an exclusive federal contract. Specifically, McKesson entered into and is bound by an exclusive federal contract called the Pharmaceutical Prime Vendor Contract ("PPV Contract").[1]

## II. THIS CASE IS REMOVABLE UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

11. The federal officer removal statute authorizes "any person acting under" a federal officer to remove to federal court a civil action "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

12. Federal officer removal requires a defendant to demonstrate that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citing *Jefferson Cty. v. Acker*,

---

[1] PPV Contract, *available at* https://www.va.gov/opal/docs/nac/ncs/ppvContractVA797P12D0001option3.pdf.

- 6 -

527 U.S. 423, 431 (1999)).

13. "[T]he Supreme Court has mandated a generous interpretation of the federal officer removal statute ever since [its enactment]: 'It scarcely need be said that such measures are to be liberally construed . . . .'" *Id.* at 1252 (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). "The Supreme Court 'has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Id.* (citing *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)). The Ninth Circuit has therefore taken "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id.*

### A. The Multi-District Opioid Litigation

14. This action is one of hundreds of related lawsuits asserting claims arising out of the sale, marketing, and distribution of prescription opioids nationwide.

15. On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See* Transfer Order, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328. More than 1,150 opioid-related actions are currently pending in the MDL.

16. McKesson intends to tag this case immediately for transfer to the MDL.

17. McKesson has removed other opioid cases from state to federal court on the basis that the complaints necessarily put at issue distributions under

the PPV Contract—specifically, cases relating to McKesson's PPV distributions to the Indian Health Service. On September 4, 2018, in the first opinion issued on the merits of McKesson's removal position, Judge Polster agreed that cases in which plaintiffs' allegations implicated McKesson's PPV distributions belong in federal court under 29 U.S.C. § 1442(a)(1), and denied motions to remand in two of those cases. Opinion and Order, *In re Nat'l Opiate Litig.*, M.D.L. 2804 (N.D. Ohio Sept. 4, 2018), ECF No. 934 (attached hereto as **Exhibit 2**). For the same reasons, federal jurisdiction is appropriate here.

### B. McKesson Is a "Person Acting Under" a Federal Officer.

18. The federal officer removal statute applies to private parties "'who lawfully assist' the federal officer 'in the performance of his official duty.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007) (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)). It is well-established that government contractors who are involved in "an effort to *assist*, or help *carry out*, the duties or tasks of the federal superior" are "acting under" a federal officer. *Id.* at 147.

19. Because Plaintiff's Complaint alleges harm related to *all* opioid addiction in the communities it serves, and explicitly alleges that *veterans are disproportionately likely* to be overprescribed and addicted to opioids, Plaintiff's allegations encompass and necessarily implicate pharmaceuticals distributed by McKesson pursuant to its responsibilities as a government contractor. By the terms of the PPV Contract, McKesson supplied and continues to supply prescription medications, including opioids, to the Department of Veterans Affairs and other federal customers nationwide. In southern Arizona generally, and Pima County particularly, distributions to federal customers under the PPV Contract represent a substantial percentage of McKesson's overall distributions to the area.

20.     The PPV Contract is governed by federal law and regulation, and is overseen by a federal contracting officer.  Under the terms of the PPV Contract, McKesson must process and fill all orders that it receives from authorized government purchasers, *see* PPV Contract § I-9(b), which includes, for example, the Southern Arizona VA Health Care System.[2]  The PPV Contract provides for prompt, typically next-day, delivery of all orders.  *Id.* I-9(l).  Moreover, the PPV Contract does not grant McKesson discretion to deny any federal orders under the PPV Contract.  *Id.* § AS3023 (Sept. 2010) (stating that McKesson "may not unreasonably delay filling an FSS [Federal Supply Schedule] order").  Instead, it must coordinate shipment decisions through the federal contracting officer assigned to administer the contract, who retains close day-to-day supervision over McKesson's fulfillment of federal orders.  *Id.*

21.     The 104-page PPV Contract contains a number of other provisions demonstrating that the federal government has engaged McKesson to "assist" the government with "carry[ing] out" the government's activities of distributing pharmaceuticals to its federal health care facilities.  *See Watson*, 551 U.S. at 143 (holding that the federal officer removal statute applies to private parties who "assist" the government in the performance of official duties).  In other words, the government retains substantial day-to-day oversight and supervision over the distribution of a meaningful portion of McKesson's supply chain.[3]

22.     Judge Polster recently ruled that this first element of the federal

---

[2] According to the Department of Veterans Affairs website, the Southern Arizona VA Health Care System serves over 171,000 veterans, and includes a 295-bed hospital as well as seven community based outpatient clinics throughout the region. *Available at About the Southern Arizona VA Health Care System*, VA (Jan. 29, 2018) https://www.tucson.va.gov/about/.

[3] According to the Department of Veterans Affairs website, the PPV Contract is "the largest contract within the [Department of Veterans Affairs] National Acquisition Center (averaging $4 billion in annual sales)." *Available at Prime Vendor Div. - Pharm. Prime Vendor (PPV) Program*, VA (Aug. 10, 2017) https://www.va.gov/oal/business/nc/ppv.asp.

officer removal statute is satisfied by the PPV Contract, because "the assistance McKesson provides to the VA [under the PPV Contract] goes beyond simple compliance and helps the government perform basic tasks." **Exhibit 2 at 16.**

### C. McKesson Was Sued "for or Relating to an[] Act Under Color of Such Office."

23. To satisfy the requirement that the suit be "relating to an an[] act under color of" federal office, a defendant "must show a nexus, a 'causal connection' between the charged conduct and asserted official authority." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999) (citing *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). The "hurdle erected by [the causal-connection] requirement is quite low." *Gonclaves By & Through Gonclaves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (citing *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). *See also Maryland v. Soper*, 270 U.S. 9, 33 (1926) ("[T]he statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority. It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution.").

24. Plaintiff alleges a "causal nexus" between *all* of McKesson's distribution activity in and around southern Arizona and Plaintiff's alleged injuries, regardless of whether McKesson's customers are private pharmacies or federal facilities. According to Plaintiff, its injuries were proximately caused by the "sheer volume of prescription opioids distributed to pharmacies in various areas," Compl. ¶ 639, and those distributions disproportionately reached veterans, *see id.* ¶¶ 483, 485, 468, 487, 516(n), 520(m), 780(o). And as explained above, a substantial portion of the quantities and frequency of the prescription opioids distributed by McKesson in southern Arizona—including all of McKesson's

distributions to Veterans Affairs facilities—were controlled by the terms of the PPV Contract. Plaintiff's allegations are thus based at least in part on conduct that McKesson performed pursuant to its obligations to fulfill orders for prescription pharmaceuticals under that federal government contract.

25. Judge Polster recently ruled that this element of the federal officer removal test was satisfied where the plaintiff's complaint "put *all* prescription opioids at issue . . . including those opioids supplied pursuant to the PPV contract." **Exhibit 2, at 17.**

### D. McKesson Has Colorable Federal Defenses.

26. In construing the colorable federal defense requirement, the Supreme Court has "rejected a 'narrow, grudging interpretation' of the statute," and "does not require the officer virtually to 'win his case before he can have it removed.'" *Jefferson Cty.*, 527 U.S. at 431 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

27. McKesson has a colorable federal defense in the form of the government contractor defense, which "protects government contractors from tort liability that arises as a result of the contractor's compli[ance] with the specifications of a federal government contract." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008)) (alteration in original). *See also Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). In denying remand in a similar case, Judge Polster ruled that "McKesson's distributions to the federal government pursuant to the PPV Contract are sufficient to demonstrate that the government contractor defense is plausible," and therefore this defense is "sufficient to meet the third prong of the federal officer removal analysis." **Exhibit 2 at 19.**

28. McKesson also has a defense that Plaintiff lacks standing to pursue

its claims, which effectively attempt to challenge McKesson's compliance with the federal Controlled Substances Act, and its implementing regulations. The Complaint seeks to hold McKesson liable at least in part for its alleged failure to halt shipments of suspicious orders. Such a duty exists only under the federal CSA and related Drug Enforcement Administration regulations, which are interpreted to require that distributors either investigate or decline to ship a suspicious order. *Masters Pharm., Inc. v. Drug Enforcement Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017). Plaintiff, therefore, effectively attempts to challenge McKesson's compliance with the CSA and its implementing regulations, but lacks standing to pursue its claim. The CSA does not create a private right of action and thus can be enforced only by federal authorities, not Plaintiff. *Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010); *United States v. Real Prop. and Improvs. Located at 1840 Embarcadero, Oakland, Cal.*, 932 F. Supp. 2d 1064, 1072 (N.D. Cal. 2013). *See also* Notice of Removal, ECF No. 1.

29. Finally, McKesson also has a colorable federal preemption defense, to the extent that Plaintiff's claims conflict with McKesson's duties under the CSA and its implementing regulations. For example, the Complaint alleges that McKesson's activities "breach the standard of care established under . . . the Controlled Substance Act (CSA) and implementing regulations and to exercise reasonable care in the distribution of opioids." Compl. ¶ 906. As Plaintiff correctly notes, in the heavily-regulated pharmaceutical distribution industry, federal statutes and regulations provide the legal standard and control what constitutes "reasonable care" under most relevant circumstances. *See id.* To the extent Plaintiff's theory concerning what conduct is "reasonable" is inconsistent with the standard set forth by the CSA, Plaintiff's claims are preempted. 21 U.S.C. § 903.

## III. ALL PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED.

30. This Supplemental Notice of Removal is timely filed under 28 U.S.C. §§ 1446(b)(2) and (3); it is filed within thirty (30) days of effective service of the Complaint on McKesson, which occurred on August 24, 2018. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 334, 347-48 (1999) (holding that the 30-day removal period begins to run upon formal service of the complaint).

31. In accordance with Local Rule 3.6(b), a true and correct copy of the process, pleadings, orders, and other documents filed or served on McKesson, along with a copy of the docket sheet, are attached as **Exhibit 3**. No substantive motions are currently pending in the state court action.

32. In accordance with Local Rule 3.6(b), a verification that the copies of the pleadings and other documents that were previously filed in the state court action are true and correct copies are being filed with this Notice of Removal. The verification is attached as **Exhibit 4**.

33. Written notice of the filing of this Notice of Removal shall be promptly served on all parties herein, and a copy of this Notice has been filed with the clerk in the state court action pursuant to 28 U.S.C. § 1446(d) and Local Rule 3.6(a).

34. Federal officer removal does not require all defendants to consent to join in the removal, and removes the entire case. *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 842 (S.D. Ill. 2006) (noting the "settled rule that removal under 28 U.S.C. § 1442 can be effected by any defendant in an action, with or without the consent of co-defendants."). *See also Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (stating that removal under § 1442 "allows a federal officer [or person acting under that officer] independently to remove a case to federal court even though that officer [or person acting under that officer]

is only one of several named defendants"); *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960) (holding removal of entire action occurs even where "some persons entitled to join in the removal petition did not").

35. McKesson reserves all defenses, including but not limited to, those under Federal Rules of Civil Procedure 8(c) and 12(b), and does not waive said defenses by the filing of this Notice.

36. McKesson reserves the right to amend or supplement this Notice.

**WHEREFORE**, McKesson removes this action, pending in the Superior Court of the State of Arizona in and for the County of Pima, Case No. C20184213, to this Court.

Dated this 24th day of September, 2018.

**O'CONNOR & CAMPBELL, P.C.**

By: */s/ Daniel J. O'Connor, Jr.*
   Daniel J. O'Connor, Jr.
   Karen J. Stillwell
   Attorneys for Defendant
   McKesson Corporation