**MITCHELL & SPEIGHTS, LLC**
Steven C. Mitchell (AZ Bar No. 009775)
4854 E. Baseline Road, Suite 103
Mesa, AZ 85206
Tel: (602) 244-1520
Fax: (602) 267-9394
Steve@mitchellspeights.com
Sam@mitchellspeights.com

**Attorneys for Plaintiff Tucson Medical Center**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Tucson Medical Center,<br>Plaintiff,<br>v.<br>Purdue Pharma L.P., *et al.*,<br>Defendants. | No. CV-18-481-TUC-RCC<br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DISTRIBUTOR DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS** |

Plaintiff, Tucson Medical Center (sometimes referred to herein as "Tucson"), by and through undersigned counsel, respectfully submits this memorandum in opposition to Defendants' Motion to Stay All Proceedings. For the reasons stated below, the motion should be denied.

## I. INTRODUCTION

Defendants claim that a stay would allow the MDL court to make a "uniform" disposition of all remand motions addressing the same issues, avoid a risk of "inconsistent" results and involve only a "short" delay[1]. The fact is, however, that once successfully delaying actions by removing them, Defendants have acted to *avoid* decisions by the MDL

[1] "Short" delay, in this case means: 1540 opioid overdoses, 236 more deaths and 132 more *babies* born addicted to opioids in Arizona. This is the opioid epidemic. Defendants motion is further evidence of its callous indifference to human life.

on similar remand issues. As evidenced by McKesson and Cardinal submitting Notices of Consent to Remand before a decision could issue. *See In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP) (N.D. Ohio) (the "MDL") Docs. 736 and 904.[2] As Defendants admit, a stay pending a dispute in the Judicial Panel on Multidistrict Litigation ("JPML") over transfer to the MDL would delay this case for several months. *See* Mot., Doc. 22 at 5.

Moreover, contrary to Defendants' characterization, any opportunity for the MDL Court to write on a blank slate has long passed. By Tucson's count, at least 21 actions, comprising claims by some 31 state and local governments, have been remanded before (and mooting any question as to) transfer to the MDL. At least seven of these decisions, issuing from six separate jurisdictions, have addressed, and uniformly rejected, the same unfounded arguments for removal that Defendants make in this case. Yet, Defendants contend that these cases somehow have no bearing on this action.

Tucson Medical Center has the same right to move forward as the plaintiffs whose actions were remanded by courts in New Hampshire, West Virginia, South Carolina, Tennessee, Texas, Alabama, Delaware, Maryland, New Mexico, Illinois, and Utah (as well the Kentucky, Oklahoma and Montana plaintiffs whose cases the MDL Court remanded and the plaintiffs in various state courts whose actions Defendants, for whatever reason, elected not to remove). Defendants offer no justification for sidelining Tucson Medical Center's case while these other actions proceed. If anything, because Tucson Medical Center serves on the front lines of the daily battle against opioid epidemic, it is of vital importance to avoid delay here

This Court is able to promptly resolve Tucson Medical Center's Emergency Motion to Remand. Defendants offer no legitimate reason why it should not. Moreover, the Court has an immediate and ongoing obligation to evaluate its subject matter jurisdiction. This Court lacks the authority to stay this case because it lacks subject material jurisdiction.

---

[2] Unless otherwise noted, all references to "Doc. __" refer to the docket in the above-captioned case, and references to "MDL Doc. __" refer to the master docket in the MDL.

And, Defendants fail to satisfy the necessary criteria for a stay, under any theory or test. Bouncing a case from one federal court without jurisdiction to another is the height of inefficiency, and would significantly prejudice Tucson. By contrast, there would be no prejudice to Defendants as this Court has set oral argument for Thursday, October 4, 2018. This Court should deny Defendants' superfluous request, which is mooted by the threshold jurisdictional questions the Court has an obligation to consider first and which are set to be argued next week.

On August 22, 2018, Tucson Medical Center filed this suit in Pima County Superior Court asserting claims based *exclusively* on Arizona statutory and common law. *See* Compl., Doc. 1.[3] Defendant AmerisourceBergen ("ABDC") removed this case to this Court on September 24, 2018. Within 24 hours, Tucson Medical Center responded. Plaintiff not only responded to the Notice but also requested expedited hearing on the Motion in order to avoid any delay on the adjudication of Tucson Medical Center's claims against Defendants. As explained in the Motion, Defendants' delay strategy would cause the most extreme prejudice upon Tucson Medical Center and its southern Arizona community. This Court also recognized that "[g]ood cause appearing for Plaintiff's request for expedited consideration of the merits of its Emergency Motion to Remand." *Order Granting Expedited Consideration*, CV-18-00481-TUC-RCC, Doc. 3 (filed 9/27/2018).

In less than two hours before the time to remove this action would have expired, McKesson filed a Supplemental Notice of Removal, which was never served by McKesson. And, the filing was not provided to Tucson Medical Center until this Court's electronic filing system notified Plaintiff's counsel at 12:01 PM MST on September 25, 2018. Understanding that the filing would further the Defendant's goal of delaying resolution of Plaintiff's case, Tucson Medical Center made great effort to promptly file an *Emergency Response To Defendant's Improper Supplemental Notice Of Removal*, again, within 24 hours, on September 26th, in order to avoid any delay.

---

[3] Unless otherwise noted, all references to "Doc. __" refer to the docket in the above-captioned case.

Undeterred, Defendants on September 27, 2018, filed a notice of potential tag-along with the JPML. However, because this case belongs in state court, Tucson intends to immediately oppose transfer of this action to the MDL Court because puddle-jumping from one court lacking jurisdiction to another, is a flagrant violation of our judicial process. On the same day, Defendants also filed an *Emergency Joint Defense Motion to Extend Deadline to Answer, Move, or Otherwise Respond to Plaintiff's Complaint*, requesting another delay of proceeding in Tucson's case. After Tucson Medical Center promptly opposed the motion within hours of the Defendants' filing, the Court ruled that there was no "good cause for the requested extension." *Order Denying Joint Motion to Extend Deadline,* 4:18-cv-00481-RCC, Doc. 24 (Filed 09/27/18).

**II. ARGUMENT**

Courts consider the following factors in a motion to stay: (1) whether the stay applicant has made a strong showing that [s]he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Sherrill v. Arizona Health Care Cost Containment System*, 2013 WL 12040008, at *1 (D. Ariz. Oct. 22, 2013) (citing *Nken v. Holder*, 556 U.S. 418, 432, 129 S.Ct. 1749 (2009)). A stay is not automatic,[4] rather "the decision to grant a stay always involves an exercise of judicial discretion and is dependent upon the circumstances of the particular case." *Sherrill v. Arizona Health Care Cost Containment System*, 2013 WL 12040008, at *1 (D. Ariz. Oct. 22, 2013) (internal citation omitted).

In the present scenario, Tucson seeks remand while the Defendants seek transfer to the MDL Court pending in another district, the most prevalent rule of analysis within this Circuit (and nationally) is the three-part test from *Meyers v. Bayer AG*, 143 F. Supp. 2d

---

[4] A stay is *not* a matter of right, rather "the decision to grant a stay always involves an exercise of judicial discretion and is dependent upon the circumstances of the particular case." *Sherrill v. Arizona Health Care Cost Containment System*, 2013 WL 12040008, at *1 (D. Ariz. Oct. 22, 2013) (internal citation omitted). The circumstances of this cases unequivocally are such that a stay is inappropriate. *See* Footnote 1.

1044 (E.D. Wis. 2001) (cited in the Emergency Motion to Remand), the leading case on this issue. Under the *Meyers* test, courts should:

> (1) Give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.
>
> (2) If the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding.
>
> (3) If the jurisdictional issue is both difficult ***and*** similar or identical to those in cases transferred or likely to be transferred, the court should stay the action.

*Gonzalez v. Ford Motor Co.*, 2017 WL 9614465, at *2 (N.D. Cal. 2017); *Bennett v. Pfizer, Inc.*, 2013 WL 12129385, at *7-8 (C.D. Cal. Nov. 7, 2013); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049, 1053 (N.D. Cal. 2004); *Meyers*, 143 F. Supp.2d at 1049.[5]

The policy reasons for strictly adhering to the *Meyers* standard are powerful. Federal courts are courts of limited jurisdiction, and, as has been noted by several courts remanding opioid-related cases, a [c]ourt [that] does not have subject matter jurisdiction over [a] case, [] has no authority to stay the case…" *County of Delta v. Purdue Pharma L.P. et al.*, No. 4:18-cv-00095, Doc. 27 at 9 (E.D. Tex. March 22, 2018).[6] Accordingly, "[I]f the federal

---

[5] As stated in Manual for Complex Litigation (4th ed. 2004):

> "Nor should the court automatically postpone rulings on pending motions, or generally suspend further proceedings. When notified of the filing of a motion for transfer, therefore, matters such as motions to dismiss or to remand, raising issues unique to the particular case, ***may be particularly appropriate for resolution before the Panel acts on the motion to transfer***. ***The Panel has sometimes delayed ruling on transfer to permit the court in which the case is pending to decide critical, fully briefed and argued motions***."

*Id.* § 20.131 at 220-221 (emphasis added). *ee also* JPML Rule 2.1; *Baker v. Prospect Mortg., LLC,* 2013 WL 5462256, at *1 (D. Ariz. Oct. 2, 2013) ("A court is not deprived of its jurisdiction or otherwise limited in its ability to proceed with a case merely because a party has filed a motion for consolidation with the Judicial Panel on Multidistrict Litigation.") (internal citation omitted).

[6] *Accord, e.g., County of Van Zandt v. AmerisourceBergen Corporation et al.*, No. 6:18-cv-00064 (E.D. Tex. Apr. 16, 2018) (same); *County of Travis v. Purdue Pharma L.P. et al.*, No. 1:18-cv-00254, Doc. 12 (W.D. Tex. March 28, 2018) (explaining that "[i]f this Court lacks subject-matter jurisdiction over this action, it has no authority to stay this action," denying stay, and granting remand); *Craft v. United Insurance Co.*, 2002 WL 32509283, at *1 (S.D. Miss. 2002) (collecting cases from Tennessee, West Virginia, Pennsylvania, New Jersey, New York, California and Wisconsin).[6]

court has no jurisdiction over a matter, then it can neither stay it nor transfer it to the MDL." *Craft v. United Insurance Co.*, 2002 WL 32509283, at *1 (S.D. Miss. 2002) (collecting cases from Tennessee, West Virginia, Pennsylvania, New Jersey, New York, California and Wisconsin).

**A. The Defendants Have Been Losing This Argument in The Vast Majority of Courts in Which It Has Actually Been Litigated**

During the course of recent litigation arising from the opioid crisis, a substantial majority of similarly situated courts, facing *both* motions to remand *and contested* motions to stay have elected to decide the motion to remand instead of deferring to the MDL Court. *See Weber County, Utah v. Purdue Pharma L.P. et al.*, No. 1:18-cv-00089, Doc. 16 (D. Utah July 31, 2018); *New Hampshire v. Purdue Pharma, et al.*, 1:17-cv-00427-PB, slip op. at 11 (D.N.H. Jan. 9, 2018); *See* Order, *County of Dallas v. Purdue Pharma L.P. et al.*, No. 3:18-cv-00426, Doc. 10 (N.D. Tex. March 7, 2018) (denying motion to stay and granting motion to remand) (attached as **Ex. A**); Order, *Estate of Bruce Brockel v. Purdue Pharma L.P. et al.*, No. 1:17-cv-000521, Doc. 45 (S. D. Ala. Jan. 3, 2018) (same) (attached as **Ex. B**); Order, *County of Delta v. Purdue Pharma L.P. et al.*, No. 4:18-cv-00095, Doc. 27 (E.D. Tex. March 22, 2018) (same) (attached as **Ex. C**); *County of Travis v. Purdue Pharma L.P. et al.*, No. 1:18-cv-00254, Doc. 12 (W.D. Tex. March 28, 2018) (same) (attached as **Ex. D**); Order, *County of Spartanburg v. Rite Aid of South Carolina, Inc.*, No. 7:18-cv-01799, Doc. 32 (D.S.C. July 27, 2018) (same) (attached as **Ex. E**); Order, *County of Anderson v. Rite Aid of South Carolina, Inc.*, No. 8:18-cv-01947, Doc. 44 (D.S.C. Aug. 20, 2018) (same) (attached as **Ex. F**); Order, *County of Greenville v. Rite Aid of South Carolina, Inc.*, No. 6:18-cv-1085, Doc. 66 (D.S.C. May 21, 2018) (same) (attached as **Ex. G**); Memorandum Opinion and Order, *County of Van Zandt v. AmerisourceBergen Corporation et al.*, No. 6:18-cv-00064, Doc. 73 (E.D. Tex. Apr. 16, 2018) (same) (attached as **Ex. H**); Order, *Brooke County Commission et al. v. Purdue Pharma L.P. et al.*, No. 5:18-cv-00009, Doc. 17 (N.D. W.Va. Feb. 1, 2018) (denying stay in eight West Virginia actions that the court later remanded) (attached as **Ex. I**); *Weber County, Utah v. Purdue Pharma*

*L.P. et al.*, No. 1:18-cv-00089, Doc. 16, 19 (D. Utah July 31, 2018) (denying stay in Utah action granting remand) (attached as **Ex. J**); *Uintah County, Utah et al. v. Purdue Pharma L.P. et al.*, No. 2:18-cv-00585, Doc. 17, 20 (D. Utah July 31, 2018) (same) (attached as **Ex. K**); *Staubus v. Purdue Pharma, L.P., et al.*, 2:17-cv-122-TAV-CLC, 2017 WL 4767688, at *8 (E.D. Tenn. Oct. 20, 2017) (attached as **Ex. L**); *Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, No. CV GLR-18-800, 2018 WL 1963816, at *2–3 (D. Md. Apr. 25, 2018) ("The City contends that the Court should rule on its Motion expeditiously because this case does not belong in federal court and, therefore, should not be transferred to the MDL. The Court agrees with the City.") (attached as **Ex. M**).

At least one court has even raised the jurisdictional issue *sua sponte* and remanded the action before the defendants sought a stay. *See* Memorandum Opinion and Order, *City of Granite City, IL v. AmerisourceBergen Drug Corporation et al.*, No. 18cv-1367, Doc. 16 (S.D. Ill. July 13, 2017) (raising jurisdictional issue *sua sponte* and remanding case).

Defendants' motion includes a lengthy footnote claiming that courts "in more than 30 opioid-related cases like this have stayed proceedings in similar circumstances." Mot., Doc. 22 at 7 & n.5. That is untrue. Three of the cited actions were filed in federal court to begin with, such that there was no question as to federal subject matter jurisdiction[7] Two of the cited decisions concern the unusual facts specific to Indian tribes.[8] In another case they cite, the Defendants later withdrew their Notice of Removal.[9] Even more misleading, Defendants fail to disclose that in **twenty-five (25)** of the **thirty-four (34)** actions cited

[7] *Chicago v. Janssen Pharm. Inc.*, No. 1:14-cv-4361 (N.D. Ill. Nov. 16, 2017), ECF No. 659; *Cty. of Wayne v. Purdue Pharma L.P.*, No. 17-cv-13334 (E.D. Mich. Nov. 15, 2017), ECF No. 29; *Lewis v. Purdue Pharma, L.P.*, No. 5:17-cv-5118 (W.D. Ark. Oct. 25, 2017), ECF No. 57. Similarly, the Arizona cases cited by Defendants as being transferred to the MDL Court, Mot., Doc. 22 at 3, serve as a red herring as they originated in federal court therefore, subject matter jurisdiction was not contested there as it is here.

[8] *Robinson Rancheria v. McKesson Corp.,* 3:18-CV-02525-VC (N.D. Cal. July 16, 2018); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. McKesson Corp.*, No. 3:18-cv-00286 (W.D. Wis. May 25, 2018).

[9] *Kentucky, ex rel. Beshear v. McKesson Corp.*, No. 3:18-cv-00010-GFVT (E.D. Ky. Apr. 12, 2018), slip op. at *3. *See In re National Opiate Litig.,* 2018 WL 4203535, at *10 ("while McKesson initially removed the case brought by the Commonwealth of Kentucky, McKesson subsequently consented to the remand of that case back to state court").

involved *agreed* orders by a court in a single district, the Eastern District of Kentucky, entered in late October and early November 2017, before the MDL was created, at the joint request defendants and plaintiffs who had requested transfer of their actions.[10] In fact, only ***three*** of the ***thirty-four*** (34) cited actions had a motion to remand pending in a somewhat analogous circumstance.[11] This is not the first time that lawyers representing pharmaceutical companies have been caught playing fast and loose with the facts. *See Betts v. Eli Lilly & Co.*, 435 F. Supp. 2d 1180, 1182–87 (S.D. Ala. 2006) (chastising removing defendants for describing cases in which "no motion to remand had been filed" as "inapposite" and chastised defendant for "citing multiple decisions by the same judge in the same MDL litigation as if they represented independent conclusions").

---

[10] *Knott Cty. v. Purdue Pharma L.P.*, No. 7:18-CV-0006 (E.D. Ky. Jan. 31, 2018), ECF No. 12; *Anderson Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00070 (E.D. Ky. Nov. 3, 2017), ECF No. 19; *Boone Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00157 (E.D. Ky. Nov. 3, 2017), ECF No. 23; *Boyle Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00367 (E.D. Ky. Nov. 3, 2017), ECF No. 19; *Campbell Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00167 (E.D. Ky. Nov. 3, 2017), ECF No. 21; *Garrard Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00369 (E.D. Ky. Nov. 3, 2017), ECF No. 20; *Fleming Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00368 (E.D. Ky. Nov. 3, 2017), ECF No. 18; *Harlan Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00247 (E.D. Ky. Nov. 3, 2017), ECF No. 19; *Knox Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00248 (E.D. Ky. Nov. 3, 2017), ECF No. 20; *Leslie Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00249 (E.D. Ky. Nov. 3, 2017), ECF No. 20; *Lincoln Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00370 (E.D. Ky. Nov. 3, 2017), ECF No. 20; *Madison Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00371 (E.D. Ky. Nov. 2, 2017), ECF No. 21; *Nicholas Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00373 (E.D. Ky. Nov. 2, 2017), ECF No. 21; *Franklin Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00071 (E.D. Ky. Nov. 2, 2017), ECF No. 19; *Henry Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00073 (E.D. Ky. Nov. 2, 2017), ECF No. 20; *Shelby Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00072 (E.D. Ky. Nov. 2, 2017), ECF No. 20; *Kenton Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00182 (E.D. Ky. Nov. 28, 2017); *Bell Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00246 (E.D. Ky. Oct. 27, 2017), ECF No. 21; *City of Lorain v. Purdue Pharma, L.P.*, No. 1:17-cv-01639 (N.D. Ohio Oct. 27, 2017), ECF. No. 66; *Boyd Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00104 (E.D. Ky. Oct. 27, 2017), ECF No. 19; *Greenup Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00105 (E.D. Ky. Oct. 27, 2017), ECF No. 19; *Clay Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00255 (E.D. Ky. Oct. 27, 2017), ECF No. 20; *Pendleton Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00161 (E.D. Ky. Oct. 27, 2017), ECF No. 23; *Whitley Cty. v. AmerisourceBergen Drug Corp.*, No. 17-cv-00250 (E.D. Ky. Oct. 27, 2017), ECF No. 19.

[11] *Cty. of San Mateo v. McKesson Corp.*, 3:18-cv-04535 (N.D. Cal. Aug. 28, 2018); *City of Jacksonville v. Purdue Pharma L.P.*, No. 3:18- cv-751-J-32PDB (M.D. Fla., Aug. 22, 2018), ECF No. 43; *Vill. of Melrose Park v. Purdue Pharma L.P.*, No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018), ECF No. 26/

### B. It is Abundantly Clear, Under the Prevailing *Meyers* Test, That This Action Should Be Remanded Immediately

Here, the Defendants, collectively, have asserted two bases for jurisdiction: (1) federal question jurisdiction, based on the notion that Tucson Medical Center's state law claims "necessarily" implicate "substantial federal questions," and (2) Defendant McKesson may remove this action as a "federal officer" because it sells commercial goods to the federal government, which constitute less than 2% of its sales. Both of these purported bases of jurisdiction are meritless and can be easily disposed of by the Court.

#### 1. The "Federal Question" Issue Has Already Been Resolved Adversely to the Defendants By Many Courts, and Cannot Seriously Be Suggested to be "Factually or Legally Difficult"

Courts in various jurisdictions across the country have had the opportunity to decide remand motions by plaintiffs whose actions Defendants improperly attempted to remove. At least seven of these decisions involved the same "federal question" theory presented here. In those cases, regardless of the state law or claims at issue, Defendants argued that: (1) the court should rule on, and reject, the merits of the plaintiff's allegations that state law imposed various common law and statutory duties, including duties to report or halt suspicious orders;[12] (2) that only federal law imposes an obligation to report and halt suspicious orders, and (3) that the case raises a substantial and disputed federal question because McKesson actually does not agree that federal law imposes any obligation to report and halt suspicious orders either. Courts have uniformly rejected these unfounded and self-contradictory arguments. For just a few of these decisions, *See, e.g,* Memorandum Opinion and Order, *City of Granite City, IL v. AmerisourceBergen Drug Corporation et al.*, No. 18-cv-1367, Doc. 16 (S.D. Ill. July 13, 2017); Memorandum Decision and Order Granting Motion to Remand, *Weber County, Utah v. Purdue Pharma L.P. et al.*, No. 1:18-cv-00089, Doc. 19 (D. Utah Aug. 7, 2018); Memorandum Decision and Order Granting Motion to

---

[12] Although Defendants attempt to limit Tucson's allegations to these discrete obligations, Complaints such as the Tucson Medical Center's alleged other statutory law duties and bases for recovery, including, for example, state law duties not to mislead the public about the actions Defendants are (and are not) taking to guard against diversion when choosing to speak voluntarily on this topic.

Remand, *Uintah County, Utah et al. v. Purdue Pharma L.P. et al.*, No. 2:18-cv-00585, Doc. 20 (D. Utah Aug. 7, 2018); *County of Anderson v. Rite Aid of South Carolina, Inc.*, No. 8:18-cv-01947 (D.S.C. Aug. 20, 2018).

To date, after having filed two Notices of Removal and a Motion for Stay, the Defendants, collectively, have still failed to cite a single decision sustaining federal question jurisdiction over state law claims arising from the opioid crisis. We are not aware of any. This is not a "factually or legally difficult question" – it is one that has already been conclusively decided. The Defendants have lost, which is precisely why McKesson filed its desperation "Hail Mary" "Supplemental Notice" asserting federal officer jurisdiction, discussed *infra.*

**2. The "Federal Officer" Theory Is Utterly Ridiculous, is Not Common to Motions Pending Before the MDL Court, and Concocted by McKesson (Literally) at the Eleventh Hour to Stave Off the Inevitable**

In the Supplemental Notice, McKesson contends that it is entitled to removal as a *de facto* "federal officer" because it sells some quantity of commercial pharmaceutical products to the federal government. With respect to the *merits* of the federal officer" theory, we incorporate by reference Tucson Medical Center's Emergency Response To Defendant's Improper Supplemental Notice of Removal. Doc. 11. In summary, we note:

(1) But McKesson has not cited a single decision, and we are not aware of any, in which a seller of *consumer goods* was held to come within the ambit of this defense – even a situation in which the claims arose *entirely* from that sale of commercial goods to the federal government.

(2) What makes the situation at bar that much more bizarre is that, based on sworn statements made by McKesson to this Court, and to the Securities and Exchange Commission, less than 2% of its sales are made pursuant to the federal contract it relies on as a basis for federal jurisdiction.

The "slippery slope" here is unimaginably expansive, as this jurisdictional theory would easily suck all of the state attorney generals' claims, and municipalities' claims, into federal court, as well as any number of actions brought against persons who happen to do some business with the federal government.

The issue also does not appear to be "similar" to issues presently pending in cases

in the MDL. Defendants have *not* been asserting this jurisdictional basis regularly, as evident by the above-cited decisions which rested on the failed "federal question" theory. This appears to be very much a trial balloon being floated in desperation in this Court – one that should be shot down immediately.

To the extent that the Defendants might contend that the decision not to remand two cases brought by Indian tribes present "similar" issues, the MDL Court plainly thinks otherwise, stating that it "***construe[d] McKesson's removal arguments very narrowly as applicable only to the specific facts of these two cases***." *In re National Opiate Litig.,* 2018 WL 4203535, at *10 (emphasis added). For the reasons described in some length in the [Emergency Motion to Strike and Supplement], Indian tribes bear a considerably closer nexus to the federal government, and to the PPV in particular, compared with the general population or a civilian hospital. In any event, the Indian tribe motions have already been decided and are no longer pending.

**C. To the Extent Pertinent to the Court's Analysis, Efficiency and Prejudice Considerations Further Militate in Favor of Immediate Remand**

**1. Immediate Remand Would Promote Efficiency**

Tucson Medical Center's Emergency Motion is set for a hearing next week. And the resources needed to resolve such a motion do not diminish with a transfer and/or stay. Rather, "the question is strictly one of where will they be expended." *Bocock v. Medventure Tech. Corp.*, No. 4:13-CV-00108-SEB, 2013 WL 5328309, at *1–3 (S.D. Ind. Sept. 20, 2013) ("Because jurisdiction must be established, the resources will be expended all the same; the question is strictly one of where they will be expended."). As explained in a recent opioid-related case, "neither the interests of justice nor judicial economy" would be served by a stay, noting that the "parties have expertly framed . . . the jurisdictional issue before the court, and briefing on the Motion to Remand" would soon conclude under that court's expedited schedule. *Weber County,* (attached as **Ex. K**). *Accord, e.g., See Betts v. Eli Lilly & Co.*, 435 F. Supp. 2d 1180, 1182–87 (S.D. Ala. 2006) (explaining that "in the MDL context there is always a third court involved: the MDL Panel' and "[t]o defer ruling

on a plainly meritorious motion to remand forces that body of seven judges (who have their own dockets in addition to the Panel's) to needlessly review and hear argument on requests for transfer, objections thereto, and post-transfer matters"); *Trotter v. Smith*, No. CIV-13-0831-F, 2013 WL 12142352, at *1 (W.D. Okla. Oct. 22, 2013) (concluding that "one court or the other is required to adjudicate this issue and it is not apparent that any particular savings of judicial effort would result from this court declining to adjudicate the remand motion"); *Greene v. Wyeth,* 344 F.Supp.2d 674, 678-79 (D. Nev.2004) (rejecting efficiency argument and denying stay where the transferor court was equally competent to decide the state law issue and there was no indication the MDL court had previously considered it); *Conroy v. Fresh Del Monte Produce, Inc.,* 325 F.Supp.2d 1049, 1054 (N.D. Cal. 2004) (concluding that a stay would be "judicially inefficient" where the court was "readily familiar" with relevant state and federal law in the jurisdiction, and "the parties have already fully briefed the issue of remand").[13]

As noted above, the issues relevant to the pending Emergency Motion to Remand are not difficult. This case belongs in state court and will get there. The only question is whether it goes there directly now, or takes a circuitous, expensive, and indefinite detour through Cleveland.

**2. The Balance of Potential Prejudices to the Parties Favors Resolution of the Emergency Motion to Remand**

Defendants fail to show any *true* hardship that might result from denial of their request, which threatens substantial prejudice to Tucson Medical Center and would *only* frustrate judicial efficiency. They complain about having to litigate in multiple forums, but that is their result of their calculated decision to flood every corner of the nation with opioids, and, in any event, they are already litigating in multiple forums The purported

---

[13] Accord *Kohl v. Am. Home Prod. Corp.*, 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999) (recognizing that "[j]udicial economy will be best served by addressing the remand issue [as it] will facilitate litigation in the appropriate forum") (quoting *Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1189 (N.D. Cal. 1997).

"prejudice" Defendants cite is not any actual issue or potential inefficiency, but rather a frustration of its true intentions—delay and denial of redress to Tucson Medical Center for its creation of the opioid epidemic. Tucson Medical Center's choice to litigate its state law claims in state court, is not unfairly prejudicial to Defendants, but the necessary and appropriate result given the limited jurisdiction granted the federal courts. *See Betts v. Eli Lilly & Co.*, 435 F. Supp. 2d 1180, 1180 n.6 (S.D. Ala.) ("[N]o party has a right to remain in federal court when subject matter jurisdiction is plainly lacking."). Allowing this Court to decide this issue at oral argument next week, in no way harms Defendants. *Accord Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 381 (D. Md. 2011) ("[I]f this Court does not have jurisdiction over this matter, then neither will the MDL court. Accordingly, this Court will consider Plaintiff's Motion to Remand before addressing the Removing Defendants' Motion to Stay.").

In contrast, a stay threatens significant prejudice to Tucson Medical Center. Defendants are wrong to claim that their request would result in only a "short" delay. Mot., Doc. 22 at 12. Defendants neglect to mention that soon after the creation of the MDL in December 2017, the MDL Court issued a moratorium on substantive filings, including remand motions. *See* MDL Doc. 130. Further at an early status conference, the MDL Court explained that it would "leave" any pending remand motions "hanging for a while" as it has "limited time and limited staff," and "just [did not] want to be tied up on individual remand motions at the moment. See Tr. Pgs. 14-15, 22 (Attached as **Ex. N**). Accordingly, any delay resulting from a stay or transfer cannot conceivably be expected to be "short" as Defendants contend. *See* Mot., Doc. at 12. Ultimately, "staying this action and allowing transfer, for all intents and purposes, decides the jurisdictional issue against Plaintiff," at least for some undetermined, lengthy period of time, time Tucson Medical Center and its community do not have. This would a particularly unfair result where as here, "a growing number of federal district courts are finding that subject matter jurisdiction does not exist in a case such as this," *Eli Lilly & Co.*, 509 F. Supp. 2d at 1020, and Defendants proffer no reason to depart from this uniform authority.

Moreover, while Defendants attempt to suggest that a stay should be granted as a matter of routine, this is not a routine case. Everyday Tucson Medical Center faces an urgent public health crisis, the likes of which has not been seen in modern times. *See generally* Compl., Doc. 1. And Tucson Medical Center is pursuing this action not only to redress past wrongs, but for injunctive and equitable relief to abate the ongoing public nuisance that has injured, and continues to injure, Tucson and its southern Arizona community, and stop the harm Defendants continue to cause. *Weese v. Union Carbide Corp.*, No. CIV. 07-581-GPM, 2007 WL 2908014, at *2 (S.D. Ill. Oct. 3, 2007) ("To undergo such a lengthy process to [later] find out that there is no federal jurisdiction would be frankly unjust").

## III. CONCLUSION

For the foregoing reasons, Tucson Medical Center respectfully requests that the Court deny the Distributor Defendants' Motion for Stay.

DATED: September 28, 2018

Respectfully submitted,

*/s/ Steven C. Mitchell*
Steven C. Mitchell (AZ Bar No. 009775)
**MITCHELL & SPEIGHTS,** LLC
4854 E. Baseline Road, Suite 103
Mesa, AZ 85206
Tel: (602) 244-1520
Fax: (602) 267-9394
steve@mitchellspeights.com
sam@mitchellspeights.com

Linda Singer
(*pro hac vice* to be submitted)
**MOTLEY RICE LLC**
401 9th Street NW
Suite 1001
Washington, DC 20004
Tel: (202) 386-9626
Fax: (202) 386-9622
lsinger@motleyrice.com

John W. ("Don") Barrett
(*pro hac vice* to be submitted)
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Tel: (662) 834-2488
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September 2018, I caused the foregoing document to be filed with the Clerk of this Court via the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *Steven C. Mitchell*______
Steven C. Mitchell