1  Daniel J. O'Connor, Jr., Bar No. 010081
2  Karen J. Stillwell, Bar No. 022711
   **O'CONNOR & CAMPBELL, P.C.**
3  7955 South Priest Drive
   Tempe, Arizona   85284
4  daniel.oconnor@occlaw.com
5  karen.stillwell@occlaw.com
   (602) 241-7000
6
7  Nathan E. Shafroth*
   COVINGTON & BURLING LLP
8  One Front Street, 35th Floor
   San Francisco, California 94111-5356
9  Tel: (415) 591-6000
   Fax: (415) 691-6091
10 nshafroth@cov.com
11 *admitted pro hac vice

12 Attorneys for Defendant McKesson Corporation

13          **IN THE UNITED STATES DISTRICT COURT**

14             **FOR THE DISTRICT OF ARIZONA**

15 Tucson Medical Center, a corporation,

16                                           Case No.:  CV-18-481-RCC
                    Plaintiff,
17        vs.

18                                           **DEFENDANT MCKESSON'S**
   Purdue Pharma L.P.; Purdue Pharma,        **OPPOSITION TO PLAINTIFF'S**
19 Inc.; The Purdue Frederick Company        **MOTION TO REMAND ON**
   Inc.; Amneal Pharmaceuticals, Inc.; Teva  **MCKESSON'S SUPPLEMENTAL**
20 Pharmaceuticals USA, Inc.; Cephalon,      **NOTICE OF REMOVAL**
   Inc.; Johnson & Johnson; Janssen
21 Pharmaceuticals, Inc.; Ortho-McNeil-
   Janssen Pharmaceuticals, Inc. n/k/a
22 Janssen Pharmaceuticals, Inc.; Janssen
   Pharmaceutica, Inc. n/k/a Janssen
23 Pharmaceuticals, Inc.; Abbott
   Laboratories; Abbott Laboratories, Inc.;
24 Depomed, Inc.; Endo Health Solutions
   Inc.; Endo Pharmaceuticals Inc;
25 Mallinckrodt, LLC; Insys Therapeutics,
26

| | |
|---|---|
| 1 | Inc.; Mallinckrodt PLC; SpecGx; |
| 2 | Allergan PLC f/k/a Actavis PLS; Watson Pharmaceuticals, Inc. n/k/a Actavis Inc.; |
| 3 | Watson Laboratories, Inc.; Actavis LLC.; Actavis Pharma, Inc. f/k/a Watson |
| 4 | Pharma, Inc.; Anda, Inc.; H.D. Smith, |
| 5 | LLC f/k/a H.D. Smith Wholesale Drug Co.; Henry Schein, Inc.; McKesson |
| 6 | Corporation; AmerisourceBergen Drug Corporation; and Cardinal Health, Inc. |
| 7 | |
| 8 | Defendants. |

1

TABLE OF CONTENTS

2   INTRODUCTION ..................................................................................... 1

3   BACKGROUND ...................................................................................... 4

4   ARGUMENT .......................................................................................... 5

5   I.    McKesson's Independent Supplemental Notice Was Procedurally Proper. ............... 5

6   II.   McKesson Meets the Legal Standard for Federal Officer Removal. ........................ 6

7        A.    McKesson Is a "Person Acting Under" a Federal Officer. ............................... 7

8        B.    A Causal Nexus Exists Between Plaintiff's Claims and McKesson's

9              Distribution Under the PPV Contract. ............................................... 9

10       C.    McKesson Has Asserted Colorable Federal Defenses ................................. 12

11             1.    McKesson has raised a colorable federal government contractor

12                   defense. ................................................................ 13

13             2.    McKesson has raised a colorable federal defense that Plaintiff lacks

14                   standing to pursue its claims. ............................................. 15

15             3.    McKesson has raised a colorable federal defense that Plaintiff's

16                   claims are preempted by the federal Controlled Substances Act. ............... 16

17  III.  McKesson Has an Immediate Right to Directly Appeal Any Remand to the

18        Ninth Circuit ............................................................................ 17

19  CONCLUSION ....................................................................................... 17

20

21

22

23

24

25

26

1

TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*In re Agent Orange Prod. Liab. Litig.*,
5
    534 F. Supp. 1046 (E.D.N.Y. 1982) .......................................................................... 14

6

*Arizona v. Manypenny*,
7
    451 U.S. 232 (1981).................................................................................................... 7

8

*Bell v. Thornburg*,
    743 F.3d 84 (5th Cir. 2014) ...................................................................................... 13
9

*Bennett v. MIS Corp.*,
10
    607 F.3d 1076 (6th Cir. 2010) ............................................................................ 13, 15

11

*Boyle v. United Technologies Corp.*,
12
    487 U.S. 500 (1988)...................................................................................... 13, 14, 15

13

*Cherokee Nation v. McKesson Corp.*,
14
    No. 6:18-cv-00056-RAW (E.D. Okla. 2018)............................................................. 3

15

*Colorado v. Symes*,
16
    286 U.S. 510 (1932).................................................................................................... 7

17

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001).................................................................................................... 13

18

*Crutchfield v. Sewage & Water Bd. of New Orleans*,
19
    829 F.3d 370 (5th Cir. 2016) .................................................................................... 13

20

*In re Cygnus Telecomm. Tech., LLC, Patent Litigation*,
21
    385 F. Supp. 2d 1022 (N.D. Cal. 2005)..................................................................... 3

22

*Davis v. South Carolina*,
    107 U.S. 597 (1883).................................................................................................... 7
23

*Durham v. Lockheed Martin Corp.*,
24
    445 F.3d 1247 (9th Cir. 2006) ................................................................................... 7

25

*Durr v. Strickland*,
26
    602 F.3d 788 (6th Cir. 2010) ................................................................................... 16

*Goncalves v. Rady Children's Hops. San Diego*,
    865 F.3d 1237 (9th Cir. 2017) ............................................................... 9, 10

*Hawaii v. Abbott Labs., Inc.*,
    469 F. Supp. 2d 835 (D. Haw. 2006) ............................................................ 5

*Hicks v. Small*,
    842 F. Supp. 407 (D. Nev. 1993) ............................................................... 13

*Hudgens v. Bell Helicopters/Textron*,
    328 F.3d 1329 (11th Cir. 2003) ................................................................ 15

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008) .................................................................... 10

*Jefferson Cty. v. Acker*,
    527 U.S. 423 (1999) ..................................................................... 7, 11, 12

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ................................................................. 11

*Maryland v. Soper*,
    270 U.S. 9 (1926) ............................................................................. 10

*Masters Pharm., Inc. v. Drug Enf't Admin*,
    861 F.3d 206 (D.C. Cir. 2017) ................................................................. 16

*Mesa v. California*,
    489 U.S. 121 (1989) ....................................................................... 12, 13

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 334 (1999) ............................................................................ 6

*In re Nat'l Opiate Litig.*,
    1:17-md-02804 (N.D. Ohio Sept 4, 2018) (attached as **Exhibit 2**) ............................ 3

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Intl. LLC*,
    2016 WL 3346349 (E.D. Va. June 16, 2016) ..................................................... 17

*In re Phoenix Licensing LLC, Patent Litigation*,
    2009 WL 464993 (D. Ariz. Feb. 24, 2009) ....................................................... 3

*Reed v. Fina Oil & Chem. Co.*,
    995 F. Supp. 705 (E.D. Tex. 1998) ............................................................ 12

*Robinson Rancheria v. McKesson Corp.*,
   3:18-cv-02525-VC (N.D. Cal. July 18, 2018), ECF No. 23 (attached as
   Exhibit 3 to Distributor Defendants' Motion to Stay, Dkt. 22) .................................... 2

*Ruppel v. CBS Corp.*,
   701 F.3d 1176 (7th Cir. 2012) ................................................................... 15

*Sawyer v. Foster Wheeler LLC*,
   860 F.3d 249 (4th Cir. 2017) ...................................................................... 9

*Tidwell v. Impaq Int'l, LLC*,
   2016 WL 7474518 (D. Md. Dec. 29, 2016) ....................................................... 5

*Tinsley v. Streich*,
   143 F. Supp. 3d 450, 456-57 (W.D. Va. 2015) .................................................. 5

*Trevino v. General Dynamics Corp.*,
   865 F.2d 1474 (5th Cir. 1989) ................................................................... 15

*United States v. Real Prop. & Improvements Located at 1840*
   *Embarcadero, Oakland, Cal.*,
   932 F. Supp. 2d 1064 (N.D. Cal. 2013) ......................................................... 16

*Watson v. Philip Morris Cos. Inc.*,
   551 U.S. 142 (2007) ............................................................................... 7

*Williams v. Costco Wholesale Corp.*,
   471 F.3d 975 (9th Cir. 2006) ...................................................................... 6

*Winters v. Diamond Shamrock Chem. Co.*,
   149 F.3d 387 (5th Cir. 1998) .................................................................... 12

*Yarnevic v. Brick's, Inc.*,
   102 F.3d 753 (4th Cir. 1996) ...................................................................... 5

**Statutes**

21 U.S.C. § 903 ..................................................................................... 17

28 U.S.C. § 1442 ............................................................................... 5, 17

28 U.S.C. § 1442(a)(1) ......................................................................... 6, 7

28 U.S.C. § 1446(b)(1) ............................................................................ 6

28 U.S.C. § 1446(d) ................................................................................................ 6

28 U.S.C. § 1447(d) .............................................................................................. 17

Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545, 546
     (2011) .............................................................................................................. 17

**Other Authorities**

Ariz. R. Civ. P. 5(c)(2)(C) ...................................................................................... 6

Fed R. Civ. P. 5(b)(2)(C) ........................................................................................ 6

Fed. R. Civ. P. 62(a) ............................................................................................. 17

Defendant McKesson Corporation ("McKesson") opposes Plaintiff's motion to remand this case, Dkt. 11, (hereinafter "Mot.")[1] based on its challenge to McKesson's Supplemental Notice of Removal on federal officer removal grounds, Dkt. 13.[2]

## INTRODUCTION

McKesson properly removed this case under the federal officer removal statute because Plaintiff's claims against McKesson encompass and necessarily implicate McKesson's distribution of prescription opioids pursuant to a federal contract that is directed, monitored, and overseen by a federal contracting officer. Complaints like Plaintiff's, which seek to hold defendants liable for actions taken under the direction of a federal officer, belong in federal, not state, court.

Plaintiff seeks to hold McKesson liable for unreimbursed healthcare costs Plaintiff allegedly incurred treating residents of Pima County, Arizona and its environs for the effects of opioids. Plaintiff alleges that McKesson is liable because: (i) McKesson distributed opioids to its customers (federal agencies, hospitals, and pharmacies) in the Pima County area; (ii) individual patients obtained those opioids; (iii) they became injured or addicted; and (iv) they then required unreimbursed treatment from Plaintiff. Plaintiff makes no attempt to carve out any *particular* opioids that it claims caused its harms. Instead, it explicitly puts at issue the *total volume* of opioids distributed in the region by McKesson and other distributors. *See, e.g.*, Compl. ¶ 50, 639; Mot. at 12 (Plaintiff's injuries "are derived from the broad distribution of opioids into the general population").

A substantial portion of the opioids McKesson distributes in Plaintiff's environs—

---

[1] Plaintiff variously refers to its paper as an "Emergency Response to Defendant's Improper Supplemental Notice of Removal" in the caption, but also describes it as a paper "in further support of Plaintiff's Emergency Motion to Remand," which was focused on the federal question removal filed by Defendant AmerisourceBergen. In substance, Plaintiff's paper is a Motion to Remand, challenging the federal officer basis for federal jurisdiction.

[2] McKesson's Supplemental Notice of Removal has a later docket number than Plaintiff's motion to remand because the Clerk of the Court merged two related dockets for this case.

*37.5%*—are distributed to Veterans Administration and other government facilities pursuant to a federal contract called the Pharmaceutical Prime Vendor Contract ("PPV Contract," attached as **Exhibit 1**). VA hospitals provide prescription medications, including opioids, to veterans. And Plaintiff's Complaint includes paragraph after paragraph alleging that veterans are *disproportionately* likely to be overprescribed opioids, become addicted to opioids, and suffer adverse clinical outcomes. Compl. ¶¶ 483, 485, 468, 487, 516(n), 520(m), 780(o). Plaintiff therefore alleges that a disproportionate amount of its unreimbursed opioid care costs was spent on veterans and further. And VA facilities in and around Pima County receive a disproportionate volume of McKesson's opioid distributions in the area. McKesson's distributions under the federal PPV contract are thus, necessarily, central to Plaintiff's claims against McKesson.

No federal court to which McKesson has moved a case like this on federal officer grounds has remanded that case. In this Circuit, a federal district court in California granted a stay of *eleven* federal-officer-removed cases in which remand motions were pending, so that the MDL Court that is overseeing over a thousand opioid cases could provide "the benefits of centralized consideration of the jurisdictional issues raised in these motions." Order Granting Motions to Stay, at 3, *Robinson Rancheria v. McKesson Corp.*, 3:18-cv-02525-VC (N.D. Cal. July 18, 2018), ECF No. 23 (attached as Exhibit 3 to Distributor Defendants' Motion to Stay, Dkt. 22). Likewise, in Wisconsin, a federal district court deferred consideration of the issue to the MDL Court, noting that while the "likely scenario, based on the court's preliminary assessment," would be to *uphold removal*, "the best option for all involved" would be for the MDL court to "issue one ruling" on the "difficult" federal officer removal issue. *Lac Courte Oreilles Band of Superior Chippewa Indians v. McKesson Corp.*, 3:18-cv-00286-jdp (W.D. Wisc. May 25, 2018), ECF No. 26; *see also Red Cliff Band of Lake Superior Chippewa Indians v. McKesson Corp.*, 3:18-cv-00380-jdp (W.D. Wisc., May 25, 2018), ECF No. 9. A federal district court in Oklahoma also declined

1  to remand a federal-officer-removed case, allowing that case—and plaintiff's motion to

2  remand—to transfer to the MDL Court.  *See Cherokee Nation v. McKesson Corp.*, No.

3  6:18-cv-00056-RAW (E.D. Okla. 2018).

4      Following those removals, Judge Polster, presiding over the MDL, *agreed* with

5  McKesson that cases like this one, in which plaintiffs' allegations implicated and had a

6  nexus to McKesson's PPV Contract distributions, *belong in federal court*, and accordingly

7  denied motions to remand. Opinion and Order, *In re Nat'l Opiate Litig.*, 1:17-md-02804

8  (N.D. Ohio Sept 4, 2018) (attached as **Exhibit 2**). Plaintiff attempts to argue that its case

9  does not implicate McKesson's federal officer operations as deeply as the cases brought

10  by Indian tribes that Judge Polster refused to remand, and that finding federal officer

11  jurisdiction here would mean that such jurisdiction would lie in *every* opioid case in which

12  McKesson is named as a defendant. Quite the opposite. Because of Plaintiff's repeated,

13  explicit allegations about the disproportionate effect of opioids on veterans, and Plaintiff's

14  unique location in an area in which McKesson disproportionately supplies opioids under

15  the PPV Contract, this case implicates McKesson's federal officer activities *even more*

16  *deeply* than the tribal cases over which federal officer jurisdiction already exists. Plaintiff's

17  invocation of a slippery slope is off the mark, since very few cases share these unique and

18  salient facts.

19      Plaintiff also "respectfully disagrees" with Judge Polster's decision, Mot. at 7,

20  suggesting that this Court should break with his reasoning. But "consistent outcomes" for

21  closely-related cases are "*precisely* the goal of the multidistrict litigation scheme." *In re*

22  *Phoenix Licensing LLC, Patent Litigation*, 2009 WL 464993, at *3 (D. Ariz. Feb. 24, 2009)

23  (emphasis added) (citing *In re Cygnus Telecomm. Tech., LLC, Patent Litigation*, 385 F.

24  Supp. 2d 1022, 1024 (N.D. Cal. 2005). Thus, if the Court is not inclined to deny remand

25  outright, it should defer its ruling and allow Judge Polster to address the issue, so that it

26  may be considered in the light of his previous holdings and avoid inconsistent application

1   of the same legal principle. *See* Distrib. Defs.' Mot. to Stay, Dkt. 22.

2   **BACKGROUND**

3   McKesson is a wholesale distributor of prescription medications. Its customers

4   include hospitals and pharmacies and—importantly, for the purposes of this Court's

5   jurisdiction—federal government agencies, including the Department of Veterans Affairs.

6   McKesson's pharmaceutical distributions to the VA are made pursuant to the PPV

7   Contract. These PPV Contract distributions include *substantial* volumes to federal

8   customers in Pima County. The PPV Contract is overseen by a federal contracting officer

9   and is governed by federal law. Declaration of Lori White, ¶ 5 ("White Decl."). The PPV

10  Contract obligates McKesson to supply prescription medications to VA facilities when they

11  are ordered, including those in Pima County and the surrounding areas. White Decl. ¶¶ 3-

12  4.

13  From 2006 through the first quarter of 2018, McKesson's PPV Contract opioid

14  distributions have comprised a full 37.5% of its total opioid distributions within Pima

15  County. *Id.* ¶ 10. Within Southern Arizona, McKesson's PPV Contract opioid distributions

16  make up 28% of all opioid distributions, and within the state as a whole, 17%. *Id.* ¶¶ 8-9.

17  Taken collectively, McKesson's federal PPV Contract customers receive more opioids

18  from McKesson than any other single McKesson customer in the entire state. *Id.* ¶ 11.

19  Plaintiff misleadingly asserts that McKesson's total PPV Contract annual revenue

20  consists of approximately 2% of McKesson's total global revenue, Mot. at 10, as if this

21  calculation is at all relevant to the proportion of PPV-distributed opioids that have allegedly

22  resulted in costs to *Plaintiff*, in *Pima County*. Plaintiff's claim that McKesson should be

23  "stuck with" Plaintiff's "2%" calculation is nonsensical for several reasons. First, the PPV

24  Contract is a federal contract and, therefore, applies chiefly to the territory of the United

25  States; whereas McKesson's total corporate revenue, as a global company, necessarily

26  includes international revenue. *See, e.g.*, McKesson International, https://www.mckesson.

com/mckesson-international/. Second, Plaintiff's Complaint puts at issue the total volume of opioids distributed that could allegedly have been the proximate cause of Plaintiff's claims of unreimbursed medical care; thus, it makes no sense to consider *national* PPV Contract revenue instead of focusing on PPV Contract distributions in the area that is actually served by Plaintiff, particularly when Plaintiff's service area includes a large VA Health Care System and several related clinics. Finally, Plaintiff's Complaint puts at issue the total *volume* of opioids distributed by McKesson, not the *revenue* that it collected thereby. A significant purpose of the PPV Contract is to implement a preferred *pricing* scheme for the federal government—thus, the federal government will in many instances pay less than other customers for the same volume of opioids, making revenue comparison numbers misleading.

## ARGUMENT

### I.   McKesson's Independent Supplemental Notice Was Procedurally Proper.

McKesson's Supplemental Notice of Removal met all procedural removal requirements, and creates a separate and independent basis for federal jurisdiction pursuant to 28 U.S.C. § 1442, *regardless* of this Court's ruling on the Notice of Removal filed by AmerisourceBergen Drug Corporation ("ABDC") on the basis of federal question jurisdiction, Dkt. 1.[3]

Plaintiff argues that McKesson's Supplemental Notice of Removal should be "stricken" because Plaintiff's counsel claims in its brief that it received notice of its filing from the Court's CM/ECF system at 12:01 p.m. on September 25, 2018. This is a *non sequitur*. Nothing in the removal statute or the local rules requires McKesson to ensure that

---

[3] Supplemental notices of removal are perfectly appropriate where there are different grounds for removal that arise as to particular defendants, or that arise after the Complaint is served. *See Hawaii v. Abbott Labs., Inc.*, 469 F. Supp. 2d 835, 838-39 (D. Haw. 2006); *Yarnevic v. Brick's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996); *Tinsley v. Streich*, 143 F. Supp. 3d 450, 456-57 (W.D. Va. 2015); *Tidwell v. Impaq Int'l, LLC*, 2016 WL 7474518, at *2 (D. Md. Dec. 29, 2016).

1   Plaintiff's counsel subjectively becomes aware of a removal at the precise moment of
2   filing. As Plaintiff notes, McKesson timely filed its Supplemental Notice of Removal
3   around 10:00 pm on September 24, 2018. Mot. at 2.[4] And as required, McKesson filed its
4   Supplemental Notice of Removal with the state court "promptly" after its federal filing. 28
5   U.S.C. § 1446(d). A conformed copy of the state-court filing, time-stamped as received on
6   September 24, 2018 at 10:24 pm, is attached as **Exhibit 3**. McKesson then served its
7   Supplemental Notice on Plaintiff by mail, as permitted by both federal court and Arizona
8   state court. Fed. R. Civ. P. 5(b)(2)(C); Ariz. R. Civ. P. 5(c)(2)(C). That Plaintiff's counsel
9   claims, without declaration or exhibit, that he did not receive an automated email from the
10  federal court's CM/ECF system until 12:01 p.m. on September 25 is of no consequence,
11  because nothing in the removal statute or the local rules requires that Plaintiff receive
12  notice *instantly*, or via electronic means; and, of course, McKesson has no control over the
13  court's CM/ECF system in any event. Plaintiff concedes that McKesson filed within the
14  statutory 30-day period, and that is sufficient.

15      McKesson's Supplemental Notice of Removal was properly and timely filed. There
16  is no basis to strike its filing and fail to consider the substantive federal officer basis for
17  removal. To the contrary, the Ninth Circuit has held that district courts have "no discretion"
18  to disregard any removal basis any party raises. *Williams v. Costco Wholesale Corp.*, 471
19  F.3d 975, 977 (9th Cir. 2006) (reversing a district court's remand for failing to address one
20  of two asserted grounds for removal).

21  **II.   McKesson Meets the Legal Standard for Federal Officer Removal.**

22      The federal officer removal statute authorizes "any person acting under" a federal
23  officer to remove to federal court a civil action "for or relating to any act under color of
24  such office." 28 U.S.C. § 1442(a)(1). To qualify for federal officer removal, the defendant

25

26  [4] "The notice of removal of a civil action or a proceeding shall be *filed* within 30 days" after service of the
    Complaint. 28 U.S.C. § 1446(b)(1) (emphasis added). *See also Murphy Bros., Inc. v. Michetti Pipe
    Stringing, Inc.*, 526 U.S. 334, 347-48 (1999).

1    must show that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal

2    nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's

3    claims; and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin*

4    *Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citing *Jefferson Cty. v. Acker*, 527 U.S. 423,

5    431 (1999)).

6        Importantly, "the Supreme Court has mandated a generous interpretation of the

7    federal officer removal statute ever since [its enactment.]" 'It scarcely need be said that

8    such measures are to be liberally construed . . . .'" *Id.* at 1252 (citing *Colorado v. Symes*,

9    286 U.S. 510, 517 (1932)). The Court 'has held that the right of removal is *absolute* for

10   conduct performed under color of federal office, and has insisted that the policy favoring

11   removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.*

12   (emphasis added) (citing *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)).

13   **A.    McKesson Is a "Person Acting Under" a Federal Officer.[5]**

14       The federal officer removal statute applies to private parties "'who lawfully assist[]'

15   the federal officer 'in the performance of his official duty.'" *Watson v. Philip Morris Cos.*

16   *Inc.*, 551 U.S. 142, 151 (2007) (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)).

17   Government contractors who are involved in "an effort to *assist*, or to help *carry out*, the

18   duties or tasks of the federal superior" are "acting under" a federal officer for purposes of

19   the statute. *Id.* at 152. McKesson meets this standard because it carries out a meaningful

20   portion (over a third) of its distribution of opioids in Pima County and the surrounding

21   areas at the direction of and in assistance to the federal government.

22       In the 1990s, the U.S. Department of Veterans Affairs transitioned from acquiring

23   and storing pharmaceuticals itself to contracting with vendors.[6] The federal government

24   created the Pharmaceutical Prime Vendor program, a contract method that is mandatory

25   _____

26   [5] Plaintiff agrees that McKesson is a "person" for purposes of federal officer jurisdiction. Mot. at 5.
     [6] *See Prime Vendor Division - Pharmaceutical Prime Vendor (PPV) Program,*, U.S. Department of
     Veterans Affairs (Sept. 26, 2018), *available at* https://www.va.gov/opal/nac/ncs/ppv.asp.

1  for all VA ordering activities, to provide drugs and other pharmaceuticals to veteran-related

2  agencies. Through this program, the government entered into the PPV Contract with

3  McKesson, under which McKesson is the primary distributor of prescription medications

4  to the Department of Veterans Affairs and other federal agencies. Plaintiff's main argument

5  relating to this element of the federal officer statute—that distribution is not a "service"—

6  is unsupported and defies common sense. Mot. at 6. Distribution of pharmaceuticals *is* a

7  service—as the MDL Court already determined—and one that McKesson provides to the

8  government according to the PPV Contract. "[A]bsent the PPV Contract, the VA would

9  have to warehouse and distribute drugs itself." **Exhibit 2 at 6.** Accordingly, "McKesson

10 performs a function that the VA would otherwise have to do itself (and in fact did do prior

11 to instituting the PPV program)." ***Id.* at 6.**

12    McKesson's provision of distribution services to the government is not done

13 pursuant to an ordinary vendor-customer relationship. Rather, McKesson's distributions

14 under the PPV Contract must meet detailed specifications and requirements, and are subject

15 to close federal government supervision. Each time McKesson fulfills a government order,

16 it must follow the PPV Contract's specifications and detailed terms and conditions. *See*

17 PPV Contract § I-1 Scope (a) and (f)-(i); *id.*, § I-9 Ordering.

18    Importantly, the PPV Contract governs and controls the very conduct that forms the

19 focus of Plaintiff's allegations against McKesson: its decisions about whether, when, and

20 in what quantities to fill orders from its customers. The PPV Contract requires prompt,

21 typically next-day, delivery of all orders, and it does *not* grant McKesson discretion to deny

22 orders, including orders based on potential diversion of opioids. *Id.* § AS3023, Diversion

23 of Pharmaceutical Products (Sept. 2010), at 79 (stating that McKesson "may not

24 unreasonably delay filling an FSS [Federal Supply Schedule] order, pending its

25 investigation of the intended use of the items ordered"); *id.* (stating that if "[McKesson]

26 refuses to fill an FSS order because of an expectation that some or all of the orders will be

diverted . . . [McKesson] must notify the Schedule contracting officer (CO) of its decision within 48 hours and state the basis for the refusal," and the facility then has an "opportunity to present its position on the claimed abuse"). *See also* **Exhibit 2, at 13** ("McKesson has only limited ability to refuse, and even when they refuse to fill an order, that decision is ultimately at the discretion of the federal contracting officer.").

The government's oversight of the PPV Contract is not theoretical or depersonalized. The VA has a contracting officer ("CO") who is responsible for management of the PPV Contract. White Decl. ¶ 6. The PPV Contract identifies a specific person as the CO, and the contract is amended whenever the identity of the CO changes. *Id.* Quarterly, a McKesson representative meets with representatives of the VA and other representatives from the participating federal facilities, to address any issues that may have arisen with McKesson's distribution under the PPV Contract. *Id.* ¶ 7. In other words, the government retains substantial day-to-day oversight and supervision over the distribution of a meaningful portion of McKesson's supply chain. As Judge Polster squarely ruled—with no limitation with respect to whether a particular plaintiff is a tribe or other entity—the "assistance McKesson provides to the VA [under the PPV Contract] goes beyond simple compliance and helps the government perform basic tasks. Therefore, McKesson was acting under the direction of a federal officer for purposes of the Federal Officer Removal Statute." **Exhibit 2 at 16.**

**B.    A Causal Nexus Exists Between Plaintiff's Claims and McKesson's Distribution Under the PPV Contract.**

To establish a causal nexus between a federally-directed activity and a lawsuit, "there need be only a *connection or association* between the act in question and the federal office." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (citations omitted). The "hurdle erected" by the causal connection requirement is "quite low." *Goncalves v. Rady Children's Hops. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (citing *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). Federal officer

removal does not require that a plaintiff sue the defendant for "the very acts which the officer admits to have been done by him under federal authority." *Id.* at 1245 (citing *Maryland v. Soper*, 270 U.S. 9, 33 (1926)). Instead, non-governmental corporate defendants need only demonstrate "that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government." *Isaacson*, 517 F.3d at 137. Here, Plaintiff is suing McKesson "because" of its distribution of prescription opioids *in their entirety*, in the quantities and frequencies ordered by its customers. With respect to one especially large and important customer—the federal government—McKesson makes those distributions "because" the PPV Contract requires it to do so.

There is a strong causal nexus between McKesson's distributions of opioids under the PPV Contract and the volume of opioids that exist in and around Pima County. McKesson's opioid distributions to federal customers under the PPV Contract make up a substantial portion of McKesson's overall opioid distributions to the area. As described above, over the past 12 years, McKesson's PPV Contract opioid distributions comprised a full 37.5% of its total opioid distributions within Pima County. *Supra* Background; White Decl. ¶ 10. Taken collectively, McKesson's federal PPV Contract customers receive more opioids from McKesson than any other single McKesson customer in the entire state. *Id.* ¶ 11.

The fact that the PPV Contract does not account for *100%* of the opioids that Plaintiff's Complaint puts at issue is irrelevant. At the pleading stage, it is impossible to know which, if any, prescription opioids that McKesson distributed were, according to Plaintiff, the proximate cause of its harms related to unreimbursed medical care. What we do know is that the Complaint itself explicitly argues that veterans are *disproportionately* likely to be overprescribed opioids, become addicted to opioids, and suffer adverse clinical outcomes. Plaintiff's assertion that it has made *no* allegations that its harms of unreimbursed care disproportionately involve veterans, Mot. at 12 n.8, is just plain wrong.

Plaintiff's Complaint specifically alleges, among other things, that "veterans returning from Iraq and Afghanistan who were prescribed opioids have a higher incidence of adverse clinical outcomes, such as overdoses and self-inflicted and accidental injuries. . . . Veterans are twice as likely as non-veterans to die from an opioid overdose." Compl. ¶ 483.[7] The *only* way allegations such as these could possibly be relevant to Plaintiff's claims is if the population in Pima County which sought unreimbursed care *disproportionately* included veterans. Plaintiff's contrary argument in its remand motion cannot be squared with its theory of liability. Furthermore, McKesson's voluminous distributions of opioids to PPV Contract facilities in the Pima County area suggest that a substantial portion of Plaintiff's alleged damages *must* implicate opioids distributed under the PPV Contract as a factual matter. Plaintiff cannot re-characterize its lawsuit now to carve out the opioids that were distributed at the direction and under the authority of a federal superior, having put *all* opioid distributions at issue in its complaint.[8]

The fact that this case is not brought by a tribe does not affect this legal analysis. Contrary to Plaintiff's suggestion, federal officer jurisdiction in those cases did *not* depend on the tribal plaintiffs themselves being PPV Contract customers. *See* Mot. at 11. What mattered was that the tribes alleged they suffered economic harm because they had to pay for the effects of opioids (whatever their origin) on those who rely on their services—*just as Plaintiff claims here*. The removal upheld by Judge Polster explained that there was a causal nexus because the tribes, like Plaintiff, "put *all* prescription opioids at issue," including "those opioids supplied pursuant to the PPV contract" through the Indian Health Service. **Exhibit 2 at 17.** This case presents the same factual scenario—Plaintiff claims to

---

[7] *See also* Compl. ¶ 483, 468, 487, 516(n), 520(m), 780(o), quoted and analyzed in Supplemental Notice of Removal, ¶ 6.

[8] Nor can Plaintiff do so at some later point; the *defendant's* theory of the case is credited when determining whether a causal connection exists. *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014) (citing *Jefferson Cty. v. Acker*, 527 U.S. 423, 432 (1999)).

have been economically harmed because of *all* opioids distributed by McKesson in the area it serves (Pima County). A full 37.5% of those distributions over the last twelve years were made to federal PPV Customers.

Moreover, because Plaintiff's suit is not severable to specific opioid distribution chains (*e.g.*, opioid distributions McKesson made under the direction of a federal officer and opioid distributions it made to private pharmacies), federal jurisdiction exists over Plaintiff's entire suit. Where a lawsuit has a partial, non-severable nexus to a defendant's actions under a federal officer, the entire case can be removed. For example, in *Reed v. Fina Oil & Chemical Co.*, the plaintiffs brought a wrongful death suit alleging that the decedent developed leukemia while working for thirty years at a synthetic rubber factory. *Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705 (E.D. Tex. 1998). One defendant removed to federal court because during and immediately after World War II, the synthetic rubber industry was overseen by the federal government. *Id.* at 707-08. The Court agreed that for at least ten years during the relevant time period, the government was in control of the plant, and the defendant satisfied the elements necessary to assert federal officer removal jurisdiction. It further held that because the plaintiffs' suit was not severable to specific time periods, removal was appropriate for the entirety of the plaintiffs' claims. *Id.* at 712.

## C.   McKesson Has Asserted Colorable Federal Defenses

At this stage, the bar is not high to assert a *colorable* federal defense. McKesson "need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400 (5th Cir. 1998). *See also Jefferson Cty.*, 527 U.S. at 431; *Mesa v. California*, 489 U.S. 121, 139 (1989) (holding that the court's only burden is to ensure that a federal defense is colorable, not that it is guaranteed to prevail). Citing this Supreme Court precedent, Judge Polster ruled that this prong "erects a low bar and merely requires that the defendant's assertion is both 'defensive' and 'based in federal law.'" **Exhibit 2 at 18** (quoting *Mesa*, 489 U.S. at 129-30).

A defendant removing under the federal officer statute need not "win his case" at the remand stage; such a defendant need only allege "a causal connection between what [it] has done under asserted official authority and the state [action]." *Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014) (alterations omitted) (quoting *Mesa*, 489 U.S. at 131). Here, several federal defenses to Plaintiff's claims are available to McKesson, including the government contractor defense, *see Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), lack of standing, and federal preemption, *see Hicks v. Small*, 842 F. Supp. 407 (D. Nev. 1993). Furthermore, McKesson needs only to demonstrate a single colorable defense; the Court need not make that finding as to all three of McKesson's federal defenses. Notably, Plaintiff entirely ignores in its remand paper McKesson's second federal defense—that Plaintiff does not have standing to bring its claims.

### 1.   McKesson has raised a colorable federal government contractor defense.

"Where the government has directed a contractor to do the very thing that is the subject of the claim, [courts] have recognized this as a special circumstance where the contractor may assert a defense." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n.6 (2001) (citing *Boyle*, 487 U.S. 500). This defense "provides immunity to contractors for conduct that complies with the specifications of a federal contract." *Crutchfield v. Sewage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016). As the Sixth Circuit recently explained, the "'uniquely federal interest' of 'getting the Government's work done' requires that, under certain circumstances, a private contractor must be protected from tort liability associated with its performance of a government contract." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1088-89 (6th Cir. 2010) (citing *Boyle*, 487 U.S. at 504-05) (alterations omitted). Importantly, Judge Polster of the MDL has *already decided* that McKesson's federal contractor defense is colorable and satisfies the second element of federal officer removal, without respect to whether the Plaintiff is a tribe. **Exhibit 2 at 19** ("McKesson's distributions to the federal government pursuant to the PPV Contract are sufficient to

1 demonstrate that the government contractor defense is plausible.").

2 The federal contractor defense applies when "(1) the United States approved
3 reasonably precise specifications; (2) the equipment conformed to those specifications; and
4 (3) the supplier warned the United States about the dangers in the use of the equipment that
5 were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. McKesson
6 need not prevail on the merits of the defense to establish jurisdiction; it need only articulate
7 its colorable applicability to Plaintiff's claims. Nonetheless, McKesson can successfully
8 allege each condition, raising a colorable government contractor defense and satisfying the
9 third prong of the federal removal statute.

10 *First*, the government issues precise specifications as to the amount and timing of
11 the pharmaceuticals delivered. "[A]ll that is necessary on this element of the defense is for
12 defendant to prove that the product it supplied was a particular product specified by the
13 government." *In re Agent Orange Prod. Liab. Litig.*, 534 F. Supp. 1046, 1056 (E.D.N.Y.
14 1982). Under the PPV Contract, McKesson distributes the particular prescription opioids
15 specified by the government. Nearly every aspect of McKesson's "product"—*i.e.*, its
16 distribution of pharmaceuticals to the federal government—is monitored by the
17 Department of Veterans Affairs and must conform to the government's requirements. *See*
18 *supra* Part II.A.; *see generally* PPV Contract.

19 *Second*, McKesson's deliveries of pharmaceuticals pursuant to the PPV Contract
20 have necessarily conformed to the requirements of the Department of Veterans Affairs.
21 Had they not, the federal government would not have accepted those deliveries and
22 McKesson would not have been paid under the contract. PPV Contract at 71.

23 *Third*, with respect to the requirement that a contractor "warn[] the government of
24 dangers about which it has actual knowledge," *Trevino v. General Dynamics Corp.*, 865
25 F.2d 1474, 1487 (5th Cir. 1989), McKesson need only make a colorable showing that it
26 had no information about the hazards of opioids that was not also known by the United

1  States government. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1185 (7th Cir. 2012). Here, the

2  United States government is wholly aware of any dangers of the diversion of opioids—as

3  demonstrated by its heavy regulation of opioids in the Federal Controlled Substances Act,

4  21 U.S.C. §§ 801-904 (the "CSA").

5      Plaintiff's claim that this defense is not colorable because McKesson is not a

6  manufacturer is unavailing. Mot. at 13. Although the case law in this area most often

7  addresses fact patterns involving manufacturers, several courts have acknowledged that

8  these principles apply in other types of federal contracts. In *Hudgens v. Bell*

9  *Helicopters/Textron*, the Eleventh Circuit held that the government contractor defense

10  could apply to a service contract to maintain helicopters. *Hudgens v. Bell*

11  *Helicopters/Textron*, 328 F.3d 1329, 1334 (11th Cir. 2003). "Although *Boyle* referred

12  specifically to procurement contracts, the analysis it requires is not designed to promote

13  all-or-nothing rules regarding different classes of contract." *Id.* Similarly, the Sixth Circuit

14  held that a cleaning company that had performed mold remediation under a federal contract

15  had raised a colorable government contractor defense sufficient to justify federal officer

16  removal. *Bennett*, 607 F.3d at 1090. The court ruled that the defense was colorable,

17  notwithstanding its non-military procurement context, "because the Supreme Court noted

18  that the origins of the defense, at least in part, were based on a case that immunized a

19  private contractor from liability arising out of its performance of a public works project."

20  *Id.* Judge Polster agreed. **Exhibit 2 at 19.**

21      McKesson meets the minimal burden of alleging a colorable government contractor

22  defense, and no more is required for this Court to retain jurisdiction.

23      **2.   McKesson has raised a colorable federal defense that Plaintiff lacks**
          **standing to pursue its claims.**
24

25      Plaintiff lacks standing to pursue the claims that it has brought against McKesson,

26  and has conspicuously failed to even address this defense in its remand motion. By alleging

that the distributors are liable at least in part for failing to halt shipments of suspicious

orders, a requirement that is found only in the federal Controlled Substances Act (the "CSA"), Plaintiff is effectively attempting to challenge McKesson's compliance with a federal statute and regulations. Although the Complaint carefully couches these allegations in the context of state tort claims, the duty to halt shipments—the alleged breach of which Plaintiff asserts—exists only under the federal CSA and related DEA regulations. *Masters Pharm., Inc. v. Drug Enf't Admin*, 861 F.3d 206, 212-13 (D.C. Cir. 2017). Plaintiff, like all other private parties, lacks standing to pursue claims under this statute. The CSA does not create a private right of action. *Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010); *United States v. Real Prop. & Improvements Located at 1840 Embarcadero, Oakland, Cal.*, 932 F. Supp. 2d 1064, 1072 (N.D. Cal. 2013).

### 3. McKesson has raised a colorable federal defense that Plaintiff's claims are preempted by the federal Controlled Substances Act.

Finally, McKesson has a colorable federal preemption defense, to the extent that Plaintiff's claims conflict with McKesson's duties under the CSA and its implementing regulations. For example, the Complaint alleges that McKesson's distribution activities, including those controlled by the CSA, did not conform to "standard of care established under . . . the Controlled Substance Act ('CSA') and implementing regulations and to exercise reasonable care in the distribution of opioids." Compl. ¶ 906. As Plaintiff itself notes, the heavily-regulated pharmaceutical distribution industry, federal statutes and regulations provide the legal standard and control what constitutes "reasonable conduct" under most relevant circumstances. To the extent Plaintiff's theory concerning what conduct is "reasonable" is inconsistent with the standard set forth by the CSA, Plaintiff's claims are preempted. Plaintiff seeks to have a state court place limits on the lawful distribution of controlled substances in a way that may be inconsistent with the nationwide scheme of the federal CSA. Such a result would violate 21 U.S.C. § 903, which forbids state laws regarding controlled substances that "positive[ly] conflicts" with the federal CSA. At this stage, the possibility that a state court might rule inconsistently with the

federal CSA is enough. Plaintiff cannot prejudge this possibility.

**III.    McKesson Has an Immediate Right to Directly Appeal Any Remand to the Ninth Circuit.**

In 2011, Congress amended 28 U.S.C. § 1447(d) to grant a direct right of appeal from an order remanding a case that was removed pursuant to the Federal Officer Removal statute (28 U.S.C. § 1442): an "order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title *shall* be reviewable by appeal or otherwise" (emphasis added).[9] McKesson maintains that remand is not appropriate, as set forth above. Nevertheless, if the Court is inclined to grant Plaintiff's remand motion on federal officer grounds, McKesson will separately move for a short stay of execution of any remand order under Fed. R. Civ. P. 62(a), so that McKesson can file a notice of appeal, and avoid "nightmarish procedural complications arising from parallel proceedings in state and federal court." *Northrop Grumman Tech. Servs., Inc. v. DynCorp Intl. LLC*, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016).

### CONCLUSION

Based on the foregoing, McKesson requests that Plaintiff's motion to remand for lack of federal officer removal jurisdiction be denied, and that the United States District Court for the District of Arizona maintain jurisdiction over Plaintiff's claims.

Dated this 2nd day of October, 2018.

*/s/ Daniel J. O'Connor, Jr.*
Daniel J. O'Connor, Jr.
Karen Stillwell
O'CONNOR & CAMPBELL, P.C.
7955 South Priest Drive
Tempe, Arizona 85284
Tel: 602-241-7002
Fax: 602-241-7039

---

[9] *See also* Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545, 546 (2011).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Nathan E. Shafroth*
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Tel: (415) 591-6000
Fax: (415) 691-6091
nshafroth@cov.com
*admitted pro hac vice*

1

## **CERTIFICATE OF FILING**

2

3

I hereby certify that on October 2, 2018, I electronically transmitted the attached document to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following registrants:

4

5

6

7

8

9

10

| | |
|---|---|
| Steven C. Mitchell<br>Samuel F. Mitchell<br>**MITCHELL & SPEIGHTS, LLC**<br>4854 E. Baseline Rd., Suite 103<br>Mesa, AZ 85206<br>steve@mtichellspeights.com<br>sam@mitchellspeights.com<br>*Attorneys for Plaintiff* | John J. Kastner, Jr.<br>Jay A. Fradkin<br>**JENNINGS, STROUSS & SALMON, PLC**<br>1760 E. River Road, Suite 230<br>Tucson, AZ 85718<br>jkastner@jsslaw.com<br>jfradkin@jsslaw.com<br>*Attorneys for AmerisourceBergen*<br>*Drug Corporation* |
| Linda Singer<br>**MOTLEY RICE, LLC**<br>401 9th Street NW<br>Washington, DC 20004<br>*Attorney for Plaintiff* | John W. Barrett<br>**BARRETT LAW GROUP, PA**<br>PO Box 927<br>Lexington, MS 39095<br>dbarrett@barrettlawgroup.com<br>*Attorney for Plaintiff* |
| Nathan Evans Shafroth<br>**COVINGTON & BURLING LLP**<br>1 Front St., Ste. 35<br>San Francisco, CA 94111<br>*Attorney for McKesson Corporation*<br>nshafroth@cov.com | |

11

12

13

14

15

16

17

18

19

20

The attached document was served on October 2, 2018, by email to the following, who are not registered participants of the CM/ECF System:

21

22

23

24

25

26

| | |
|---|---|
| Mark S. Cheffo<br>Hayden A. Coleman<br>Jae Hong Lee<br>**DECHERT, LLP**<br>Three Bryant Park<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>mark.cheffo@dechert.com<br>hayden.coleman@dechert.com | Paul J. Cosgrove<br>**ULMER & BERNE-CINCINNATI**<br>600 Vine Street, Suite 2800<br>Cincinnati, OH 45202<br>pcosgrove@ulmer.com<br>*Attorney for Amneal Pharmaceuticals, Inc.* |

| | |
|---|---|
| jae.lee@dechert.com<br>*Attorneys for Purdue Pharma LP, Purdue Pharma, Inc. and The Purdue Frederick Company* | |
| Christina M. Vitale<br>**MORGAN, LEWIS & BOCKUIS, LLP**<br>1000 Louisiana St., Suite 4000<br>Houston, TX 77002<br>christina.vitale@morganlewis.com<br>*Attorney for Teva Pharmaceuticals, USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.* | Collie F. James, IV<br>**MORGAN, LEWIS & BOCKUIS, LLP**<br>600 Anton Blvd.<br>Costa Mesa, CA 92626<br>collie.james@morganlewis.com<br>*Attorney for Teva Pharmaceuticals, USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.* |
| Steven A. Reed<br>**MORGAN, LEWIS & BOCKIUS, LLP**<br>1701 Market Street<br>Philadelphia, PA 19103<br>steven.reed@morganlewis.com<br>*Attorney for Teva Pharmaceuticals, USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.* | Brian M. Ercole<br>**MORGAN, LEWIS & BOCKIUS, LLP**<br>200 S. Biscayne Blvd., Suite 5300<br>Miami, FL 33131<br>brian.ercole@morganlaw.com<br>*Attorney for Teva Pharmaceuticals, USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.* |
| Charles Lifland<br>**O'MELVENY & MYERS, LLP**<br>400 S. Hope Street<br>Los Angeles, CA 90071<br>clifland@omm.com<br>*Attorney for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.* | John A. McCauley<br>James K. O'Connor<br>**VENABLE, LLP**<br>750 E. Pratt Street, Suite 900<br>Baltimore, MD 21202<br>jmccauley@venable.com<br>jko'connor@venable.com<br>*Attorneys for Abbott Laboratories; Abbott Laboratories, Inc.* |

| | |
|---|---|
| Kevin M. Sadler<br>**BAKER BOTTS, LLP**<br>1001 Page Mill Road<br>Building One, Suite 200<br>Palo Alto, CA 94304<br>kevin.sadler@bakerbotts.com<br>*Attorney for Depomed, Inc.* | Scott D. Powers<br>**BAKER BOTTS, LLP**<br>98 San Jacinto Blvd., Suite 1500<br>Austin, TX 78701<br>scott.powers@bakerbotts.com<br>*Attorney for Depomed, Inc.* |
| John J. Lombardo<br>**ARNOLD & PORTER KAYE SCHOLER, LLP**<br>777 S. Figueroa Street, 44th Floor<br>Los Angeles, CA 90017<br>john.lombardo@arnoldporter.com<br>*Attorney for Endo Health Solutions, Inc.; Endo Health Pharmaceuticals, Inc.* | Rocky C. Tsai<br>**ROPES & GRAY, LLP**<br>Three Embarcadero Center<br>San Francisco, CA 94111<br>rocky.tsai@ropesgray.com<br>*Attorney for Mallinckrodt, LLC; Mallinckrodt, PLC; SpecGx, LLC* |
| J. Matthew Donohue<br>Joseph L. Franco<br>**HOLLAND & KNIGHT, LLP**<br>2300 U.S. Bancorp Tower<br>111 S.W. Fifth Avenue<br>Portland, OR 97204<br>matt.donohue@hklaw.com<br>joe.franco@hklaw.com<br>*Attorneys for Insys Therapeutics, Inc.* | Donna Welch<br>Martin L. Roth<br>Timothy Knapp<br>**KIRKLAND & ELLIS, LLP**<br>300 North LaSalle<br>Chicago, IL 60654<br>donna.welch@kirkland.com<br>martin.roth@kirkland.com<br>timothy.knapp@kirkland.com<br>*Attorneys for Allergan PLC f/k/a Actavis PLS; Watson Pharmaceuticals, Inc. aka Actavis, Inc.* |
| Jennifer G. Levy<br>**KIRKLAND & ELLIS, LLP**<br>655 Fifteenth Street NW<br>Washington, DC 20005<br>jennifer.levy@kirkland.com<br>*Attorney for Allergan PLC f/k/a Actavis PLS* | Daniel J. Jarcho<br>**ALSTON & BIRD, LLP**<br>950 F Street NW<br>Washington, DC 20004<br>daniel.jarcho@alston.com<br>*Attorney for Noramco, Inc.* |

| | |
|---|---|
| Cari K. Dawson<br>Jenny A. Mendelsohn<br>**ALSTON & BIRD, LLP**<br>1201 West Peachtree Street NW<br>Atlanta, GA 30309<br>cari.dawson@alston.com<br>jenny.mendelsohn@alston.com<br>*Attorneys for Normaco, Inc.* | James W. Matthews<br>Katy E. Koski<br>Redi Kasollja<br>**FOLEY & LARDNER, LLP**<br>111 Huntington Avenue<br>Boston, MA 02199<br>jmatthews@foley.com<br>kkoski@foley.com<br>rkasollja@foley.com<br>*Attorneys for Anda, Inc.* |
| Kathleen L. Matsoukas<br>Oni N. Harton<br>**BARNES & THORNBURG, LLP**<br>11 South Meridian Street<br>Indianapolis, IN 46204<br>kathleen.matsoukas@btlaw.com<br>oni.harton@btlaw.com<br>*Attorneys for H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.* | Adam Weisman<br>**HINDERAKER RAUH & WEISMAN, PLC**<br>2401 East Speedway Blvd.<br>Tucson, AZ 85719<br>adam@hrwtucson.com<br>*Attorney for Henry Schein, Inc.* |
| John P. MacDonald<br>C. Scott Jones<br>Brandon J. Montminy<br>**LOCKE LORD, LLP**<br>2200 Ross Avenue, Suite 2800<br>Dallas, TX 75201<br>jmcdonald@lockelord.com<br>sjones@lockelord.com<br>brandon.montminey@lockelord.com<br>*Attorneys for Henry Schein, Inc.* | Enu Mainigi<br>F. Lane Heard, III<br>Steven M. Pyser<br>Ashley W. Hardin<br>**WILLIAMS & CONNOLLY, LLP**<br>725 Twelfth Street NW<br>Washington, DC 20005<br>emaingi@wc.com<br>lheard@wc.com<br>spyser@wc.com<br>ahardin@wc.com<br>*Attorneys for Cardinal Health, Inc.* |

*/s/ Karen Larson*