**MITCHELL & SPEIGHTS, LLC**
Steven C. Mitchell (AZ Bar No. 009775)
Samuel F. Mitchell
(*pro hac vice* to be submitted)
4854 E. Baseline Road, Suite 103
Mesa, AZ 85206
Tel: (602) 244-1520
Fax: (602) 267-9394
Steve@mitchellspeights.com
Sam@mitchellspeights.com

**Attorneys for Plaintiff Tucson Medical Center**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| TUCSON MEDICAL CENTER, a corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>PURDUE PHARMA L.P., *et al*.,<br><br>   Defendants. | No. 4:18-cv-00481-RCC<br><br>**PLAINTIFFS REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND AND MOTION TO STRIKE** |

Plaintiff Tucson Medical Center (sometimes referred to as "Plaintiff"), by and through undersigned counsel, respectfully submits this reply memorandum, in further support of (1) Plaintiff's Emergency Motion to Remand [Doc No. 7] (the "Motion to Remand"), and (2) "Plaintiff's Emergency Response to Defendant's Improper Supplemental Notice of Removal" [Doc. No. 11] (the "Motion to Strike"). For the reasons stated below, and in Plaintiff's earlier-filed papers, this action should be remanded to state court.

### I. INTRODUCTION

This case belongs in state court. Federal courts, presented with similar cases, have

-1-

*unanimously* concluded that state law claims arising from the Defendants' conscious indifference to human life in creating the opioid crisis do not necessarily implicate substantial federal issues. Notwithstanding the pendency of hundreds (if not thousands) of cases arising as a result of the Defendants' malfeasance, the Defendants still ***cannot cite one*** case in which a district court has bought its baseless and porous argument for federal jurisdiction.

Defendant McKesson Corp. ("McKesson") has contrived an alternative stretched beyond the pale theory that it is, for all intents and purposes, a "federal officer" because it distributed opioids through certain government channels. But a government contractor cannot and shall not avail itself of removal on this basis, or of the related government contractor defense, unless the federal government gave explicit instruction which in turn, foreclosed the contractor's ability to comply with state law. McKesson has made no attempt to explain how anything the government required it to do prevented it from complying with state law. In any event, Plaintiff has disclaimed and waived any right to recovery against McKesson arising out of McKesson's distribution of opioids pursuant to its Pharmaceutical Prime Vendor Contract. Doc. No. 41. Such post-removal disclaimers have been broadly recognized as disposing of any federal nexus that might have earlier vested a district court with original jurisdiction and is more than sufficient to support immediate remand.

Both purported theories for removal are meritless. It is not difficult to see that Defendants' conduct has everything to do with creating confusion and delay, and *nothing* to do with the merits. This is further evidenced by the multiple motions for stays filed by the Defendants, as well as a not so veiled threat to appeal the adverse determination on remand that they seem to expect. The Court should remand this action without further delay and put an end to this gamesmanship.

**II. ARGUMENT**

**A. AmerisourceBergen Offers Nothing New in Support its Claim of Federal Question Jurisdiction, but Merely Rehashes Baseless Arguments**

**That Have Failed Across the Country.**

What is most notable about "AmerisourceBergen Drug Corporation's Brief in Opposition to Plaintiff's Motion to Remand**"** [Doc. No. 36] is not what it says, but rather, what it does not. After removing dozens of cases to federal court, and opposing nearly as many motions to remand, and filing and re-filing the same brief over and over, ABDC still *cannot cite a single case, from any court, in which it has been successful*. That's because **there are none**. Every court to address this question has found that a "substantial federal question" is not by "necessity" implicated by state law claims arising from the conspiracy alleged in this action. *See, e.g., In Re: Nat'l Prescription Opiate Litig.,* MDL No. 2804 [Doc. # 899] (N.D. Ohio Aug, 23, 2018) (remanding action brought by the State of Montana to a state court in Montana); *Weber County, Utah v. Purdue Pharma, L.P.,* 2018 WL 3747846 (D. Utah Aug. 7, 2018); *Uintah County, Utah v. Purdue Pharma, L.P.,* 2018 WL 3747847 (D. Utah Aug. 7, 2018); *New Mexico ex rel. Balderas v. Purdue Pharma, L.P., et al.*, 2018 WL 2942346, at *4 (D.N.M. June 12, 2018); *Delaware v. Purdue Pharma L.P.*, 2018 WL 1942363 (D. Del. Apr. 25, 2018); *State of West Virginia ex rel. Morrisey v. McKesson Corp.*, 2017 WL 357307 (S.D. W.Va. Jan. 24, 2018); Order, *County of Dallas v. Purdue Pharma L.P. et al.*, No. 3:18-cv-00426, Doc. 10 (N.D. Tex. March 7, 2018) (denying motion to stay and granting motion to remand); Order, *Estate of Bruce Brockel v. Purdue Pharma L.P. et al.*, No. 1:17-cv-000521, Doc. 63 (S. D. Ala. March 29, 2018) (remanding case back to state court following 11th Circuit ruling for the plaintiff); Order*, County of Delta v. Purdue Pharma L.P. et al.,* No. 4:18-cv-00095, Doc. 27 (E.D. Tex. March 22, 2018) (denying motion to stay and granting motion to remand); *Order, County of Travis v. Purdue Pharma L.P. et al.,* No. 1:18-cv-00254, Doc. 12 (W.D. Tex. March 28, 2018) (denying motion to stay and granting motion to remand); Order*, County of Spartanburg v. Rite Aid of South Carolina, Inc.,* No. 7:18-cv-01799, Doc. 32 (D.S.C. July 27, 2018) (denying motion to stay and granting motion to remand); Order, County of Anderson v. Rite Aid of South Carolina, Inc., No. 8:18-cv-

01947, Doc. 44 (D.S.C. Aug. 20, 2018)(denying motion to stay and granting motion to remand); Order, *County of Greenville v. Rite Aid of South Carolina, Inc.*, No. 6:18-cv-1085, Doc. 66 (D.S.C. May 21, 2018) (denying motion to stay and granting motion to remand); Memorandum Opinion and Order, *County of Van Zandt v. AmerisourceBergen Corporation et al.*, No. 6:18-cv-00064, Doc. 73 (E.D. Tex. Apr. 16, 2018) (denying motion to stay and granting motion to remand). This is hardly a close question, nor is it a question of first impression.

### B. There Was, and Is, No "Federal Officer" Jurisdiction.

#### 1. Plaintiff Has Disclaimed and Waived Any Claims Arising in Whole or in Part from the PPV Contract Cited by McKesson, Eliminating Any Plausible Reason for the Court to Adjudicate Plaintiff's State Law Claims.

For the reasons stated in the Motion to Strike, and in Section II(B)(2), *infra*, there was no basis for removal, at the time of removal, under the "federal officer" theory. But even assuming, for the sake of argument[1], that there was a basis for "federal officer" jurisdiction at the time of removal, it is no longer true now, and there is no longer any plausible reason for the Court to assert whatever supplemental jurisdiction McKesson argues it had over the pending state law claims.

Tucson Medical Center may and has, disclaimed any claims arising from McKesson's contract with the federal government which provided the, arguable and disputed, basis of federal jurisdiction under 28 U.S.C. § 1441(a)(1), and therefore have removed any "federal officer" jurisdiction as the basis for federal original jurisdiction under this theory. *See* Doc. No. 41. Indeed, "federal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." *Dougherty v. A O Smith Corp.,* Civil Action No. 13–1972–SLR–SRF, 2014 WL 3542243, at *10 (D. Del. July 16, 2014). Such waivers are broadly

---

[1] This assumption is made wholly in the alternative and Plaintiff vehemently denies any "federal officer" argument McKesson may posit.

-4-

accepted within the Ninth Circuit, as elsewhere, as there are many decisions within the Ninth Circuit remanding cases based on waivers filed after removal and/or included in papers supporting remand. *See, e.g. Schulz v. Crane Co.,* No. 2:13–CV–02370–KJM, 2014 WL 280361, at *2 (E.D. Cal. Jan. 23, 2014) (waiver filed in federal court after removal); *Lara v. CBS Corp*, 2013 WL 4807168 (C.D. Cal. Sep. 6, 2013) (remanding, holding that waiver contained in plaintiff's moving papers sufficient to waive federal claims); *Lockwood v. Crane Co*., 2012 WL 1425157 (C.D. Cal. Apr. 25, 2013) (plaintiff's "Notice of Waiver of Claims" filed shortly after removal sufficient to justify remand); *Pratt v. Asbestos Corp*., No. CV-11-3503-DMR, 2011 WL 4433724 (N.D. Cal. Sept. 22, 2011) (remanded, following waiver filed after removal, of claims relating to federal contracts).

Once all federal claims (and/or parties against whom federal claims have been asserted) have been removed from an action that was removed from state court, the federal court generally has discretion to (1) adjudicate the remaining state law claims, or (2) remand them to state court. *See* 28 U.S.C. § 1367(c)(3) (the district court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction"). The usual practice is to remand such actions if the federal claims have been resolved prior to *trial. Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988) (when federal claims have been resolved prior to trial, "in the usual case the balance of factors will weigh toward remanding any remaining pendent state claims to state court"). Here, whatever federal claims may have been pleaded have not only been resolved prior *to trial,* they have been resolved prior to the filing of any responsive pleadings. Even assuming that the Court had some basis for original jurisdiction in the first place, such basis no longer exists, and as a consequence, there is no plausible reason for this Court to adjudicate Tucson Medical Center's state law claims.

### 2. McKesson Had No Basis, at the Time of Removal, for Removing This Action as a "Federal Officer"

Because any claims arising from the PPV contract have been resolved, there is little

-5-

reason to dwell on the question of whether "federal officer" jurisdiction existed at the time of removal. In an abundance of caution, Plaintiff shall briefly address arguments made in "Defendant McKesson's Opposition to Plaintiff's Motion to Remand on McKesson's Supplemental Notice of Removal" [Doc. No. 38] ("McKesson Opp.").

### a. McKesson Has Not Alleged that the Federal Government Required it to Ship Even One Suspect Order of Opioids, Much Less a Material Quantity

In the "Emergency Motion to Strike," Plaintiff noted that McKesson had identified itself in the Supplemental Notice as a "supplier" of pharmaceutical goods, and that sellers of goods are not "federal officers" when the goods they provide are commercial products not made to government specifications.

McKesson has moved the goalposts, and now contends that, instead of being a supplier, it is a provider of "distribution services." McKesson Opp., at 8. Even assuming that resellers of commercial goods can be characterized as providers of a "distribution service" and that McKesson is a service provider, what is missing from McKesson's submissions is any attempt to explain how the federal government somehow forced it to violate the law in the manner in which it provided this "distribution service," as the gravamen of this jurisdictional theory is that "the government made me do it." *Alsup v. 2-Day Blinds, Inc.,* 435 F.Supp.2d 838, 847-48 (S.D.Ill.2006) (citations omitted). The typical successful assertion of the "federal officer" defense contains an explanation that the government *actually did* direct the defendant to engage in a practice alleged to violate state law, such as a statement that the government *actually did* direct the Defendant to use a hazardous substance in a piece of military equipment, or that the government *actually did* direct the defendant to perform a hazardous service that caused injury to others. Here, in contrast, McKesson, at most, has suggested that the federal government *could, theoretically*, after exhausting certain procedural requirements, have told it to ship orders that McKesson suspected were improper.

The relevant contract provision, AS3023, makes it clear that the contractor is

permitted to suspend suspicious orders, in the first instance, "because of an expectation that some or all of the orders will be diverted or refuses to continue accepting indirect orders because of a perceived pattern of diversion." *Then* the contractor must notify the contracting officer ("CO") of that suspension within 48 hours. *Then* the CO *may* direct the contractor to fill the order, but only "if the CO finds that there is no factual basis for the Contractor's decision." *Id*. AS3023 does *not* simply require McKesson to ship all orders without asking questions, rather it provides a procedure for addressing suspicious orders and resolving disputes pertaining to them.

More importantly, AS3023 only describes the *rights and obligations* of the contractor and the CO. It says nothing about what *actually occurred* during the course of the contractual relationship between the VA and McKesson. What is notably missing from McKesson's papers is: (1) the description of even *a single instance* in which McKesson ever refused to fill a an order under the PPV, much less a statement that this occurred with respect to a material quantity of orders, or (2) the description of even a single instance in which a CO *directed* McKesson to fill an order over McKesson's objections, much less an allegation that this is something that occurred regularly.

McKesson would have a valid "federal officer" argument if the federal government had actually compelled McKesson to engage in the conduct that Plaintiff alleges was in violation of state laws. McKesson could have stated in its Notice of Removal that "McKesson regularly refuses to fill government orders it believes are suspicious, however, it has been instructed by the government to fill those orders immediately." It did not say that. It will not say that. It has not stated that the government *ever* told it to do *anything*, but instead proffers the suggestion that the federal government *could have* done so. That is not enough to establish that it was "was acting "pursuant to a federal officer's directions," *Fidelitad, Inc. v. Institu, Inc.*, 2018 WL 4568555, at *3 (9th Cir. Sept. 25, 2018) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252–53 (9th Cir. 2006)), nor that such directions prevented it from complying with state (or federal) laws pertaining to controlled

-7-

substances, public nuisances, or otherwise. This jurisdictional theory fails where there is no suggestion by the removing defendant that the government prevented the defendant from complying with state law. *See Walek v. Boeing Co.,* 2016 WL 910150, at *5 (C.D. Cal. Mar. 9, 2016) (removing defendant "must show that the Government made a discretionary decision … that conflicted with state law, therefore *cause[d]* the defendant to violate state law") (emphasis added) (quoting *Prewett v. Goulds Pumps (IPG)*, No. C09-0838 RSM, 2009 WL 2959877, at *7 (W.D. Wash. Sept. 9, 2009)); *Custer v. Cerro Flow Prods.*, No. 09-514-DRH, 2009 WL 5033931 (S.D. Ill. 2009) ("Defendants have not pointed to any government requirement *that prevented them* from handling and disposing of the PCBs with care") (emphasis added). Here, McKesson, at most, suggests the federal government *could have* prevented it from distributing opioids with care (at least in the PPV channel), but does not claim that the federal government actually did prevent it from doing so.

### b. McKesson has Alleged No Causal Nexus Between Plaintiff's Injuries any Government Instructions to Illegally or Imprudently Perform "Distribution Services"

There is no "causal nexus" between plaintiff's injuries and acts taken by McKesson at the government's direction because McKesson has not identified *anything* the government actually did to prevent it from complying with Arizona law. Even assuming that its percentage of sales that are made under the PPV contract is somewhat larger in this region than the 2% share they appear to be nationwide, it is irrelevant if McKesson cannot claim that the government ever directed it to do anything differently with respect to suspicious orders through the PPV channel than it would have done with ordinary private sector sales. McKesson would have a strong "causal nexus" argument if it stated that the PPV channel was a veritable opioid floodgate, and that this was because of specific directions to McKesson to ship suspect orders over its objections. But McKesson makes no statements that the PPV channel actually functioned in any materially different respect from other sales and distribution channels.

McKesson continues to rely heavily on the decision made by the MDL Court concerning Indian tribes – the only decision Plaintiff is aware of from any court denying any motion to remand any opioid-related case for any reason. *In re National Opiate Litig.,* 2018 WL 4203535 (N.D. Ohio Sept. 4, 2018). But McKesson does not even acknowledge, much less refute the implications of, the fact that the MDL Court "***construe[d] McKesson's removal arguments very narrowly as applicable only to the specific facts of these [the] two [Indian tribe] cases***." 2018 WL 4203535, at *10 (emphasis and extra emphasis added). Additionally, McKesson relies on four cases it had removed on this basis, and which were stayed by the courts to which they were removed. But these are all cases brought by Indian tribes, and two are the same cases that were at issue in the MDL Court's September 4, 2018 order.[2] McKesson is trying to expand this basis for federal jurisdiction beyond Indian tribe cases – something the MDL Court itself countenanced against, as the MDL Court insisted that its decision, which was "close," was limited to the two cases before it.

### c. McKesson Has No Colorable Federal Defense

McKesson does not, and cannot, dispute that its "government contractor" defense is not viable in this Circuit, because the defense is limited to military equipment contracts. *See Cabalce v. Thomas E. Blanchard & Assoc., Inc.,* 797 F.3d 720, 731 (9th Cir. 2015) (quoting *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 n.1 (9th Cir. 1997) ("In the Ninth Circuit, however, [the government contractor defense] is *only* available to contractors who design and manufacturer military equipment."). Beyond this not insignificant problem, the defense would fail anywhere else, too, because there is no

---

[2] *See* McKesson Resp., at 2 (citing *Robinson Rancheria v. McKesson Corp.*, 3:18-cv-02525-VC (N.D. Cal. July 18, 2018), *Lac Courte Oreilles Band of Superior Chippewa Indians v. McKesson Corp.*, 3:18-cv-00286-jdp (W.D. Wisc. May 25, 2018), ECF No. 26, Red *Cliff Band of Lake Superior Chippewa Indians v. McKesson Corp.*, 3:18-cv-00380-jdp (W.D. Wisc., May 25, 2018), and *Cherokee Nation v. McKesson Corp.*, No. 6:18-cv-00056-RAW (E.D. Okla. 2018)). *All* of these cases were brought by Indian tribes, and two of them, the *Lac Courte Oreilles* and *Cherokee* cases, were the two cases decided in the MDL Court's order.

suggestion that McKesson warned the government of known risks[3] arising from the performance of its "distribution services," *i.e.*, of suspicious orders known to McKesson. McKesson suggests that it satisfies this prong because it is public knowledge, at least at this point, that *opioids themselves* are dangerous. McKesson Opp. at 14-15. But McKesson cannot go back and forth as to whether it is providing goods or services. If it is a "service provider" of "distribution services" (as it presently maintains for purposes of the "under direction" requirement for removal) it needs to show that it warned the government about suspicious orders or distribution patterns, not of specific attributes of the product.[4] If it said nothing to the government about distribution irregularities, it has no government contractor defense. If there were no irregular distributions at all, McKesson has at least a partial merits defense under state law, but it has no government contractor defense – because the government contractor defense is premised on the notion that the defendant *did* engage in the alleged conduct, but that it was told to do so, in precise terms, by the government.

McKesson's purported preemption defense is completely unsupported, as McKesson has *not cited a single case* in which any person, anywhere, has succeeded in asserting this defense under the CSA. It is nothing more than an unsubstantiated theory and, most certainly, not a cognizable defense.

McKesson's purported "federal" standing defense is preposterous. Prudential standing to bring Arizona claims is a matter of Arizona law. The only authorities McKesson cites in support of this standing defense, whatever the theory is, is case law holding that there is no right of action under the CSA – but those cases say nothing about

---

[3] "Liability for design defects in military equipment cannot be imposed, pursuant to state law, when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).
[4] If McKesson is providing goods, the defense fails under the first prong of *Boyle* because, as noted in the Emergency Motion, the goods it provided were commercial goods, and were not made to government specifications.

-10-

state law claims at all, much less anything relating to prudential or constitutional standing requirements relating to such state law claims.

### 3. McKesson's "Argument" About a Right of Appeal is Not a Cognizable *Argument* Concerning the Merits of Remand – It is a *Threat* to Create Further Delays

McKesson inserts a gratuitous "section" into its brief to point out that remands of actions removed under 28 U.S.C. § 1442 are appealable. McKesson Resp., at 17. But that is not an argument that remand is *wrong*- it is a *threat* to appeal a decision adverse to McKesson. This "argument" and bullying should not be well-taken, and should be disregarded.

McKesson makes reference to its recently filed motion seeking a 14-day stay of any remand order under Fed. R. Civ. P. 62. We address the propriety of a such a 14-day stay, or any other stay, in a separate opposition filed in response to that motion.

## III. CONCLUSION

For the reasons stated above, and in Plaintiff's earlier-filed papers, this action should be immediately remanded to Pima County Superior Court.

DATED this 3rd day of October, 2018.

Respectfully Submitted,

/s/ *Steven C. Mitchell*
Steven C. Mitchell (AZ Bar No. 009775)
**MITCHELL & SPEIGHTS,** LLC
4854 E. Baseline Road, Suite 103
Mesa, AZ 85206
Tel: (602) 244-1520
Fax: (602) 267-9394
steve@mitchellspeights.com
sam@mitchellspeights.com

Linda Singer
(*pro hac vice* to be submitted)
**MOTLEY RICE LLC**
401 9th Street NW

Suite 1001
Washington, DC 20004
Tel: (202) 386-9626
Fax: (202) 386-9622
lsinger@motleyrice.com

John W. ("Don") Barrett
(*pro hac vice* to be submitted)
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Tel: (662) 834-2488
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October 2018, I caused the foregoing document to be filed with the Clerk of this Court via the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *Steven C. Mitchell*_____
Steven C. Mitchell